## WILLIAM C. ROSS v. WELLS W. LEGGETT.

*Arrest for misdemeanor must be by warrant issued on a complaint duly made—Or by an officer or bystander who witnesses the offense—False imprisonment—Measure of damages—See page 453 of opinion for statement of the law regulating same—Actual and exemplary damages. (See head-note 3.)*

1. No arrest can be made in this State for a misdemeanor unless by warrant upon complaint duly made, or by an officer or bystander who actually *sees* the offense which constitutes the misdemeanor.

2. For a statement of the law regulating the measure of damages in an action for false imprisonment, see page 453 of opinion.

3. Actual damages are those which the injured party is entitled to recover for wrongs received and injuries done when none were intended; but in cases where the injuries are inflicted *intentionally,* or occur through *carelessness* or *negligence* amounting to a *wrong* so *reckless* and *wanton* as to be without *palliation* or *excuse,* further damages are frequently and properly given, and have been variously designated as "exemplary," "punitory," "vindictive," "compensatory," or "added" damages. The important question always is, in every case, was the character of the wrong suffered, or injury sustained, such as may be lawfully atoned for or compensated in money.

Error to Superior Court of Detroit. (Chipman, J.) Argued April 7 and 8, 1886. Decided June 10, 1886.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Charles M. Swift* (*Otto Kirchner,* of counsel), for appellant:

Ever since *Detroit Daily Post Co. v. McArthur,* 16 Mich. 447, it has been established in this State that exemplary damages, *as such,* are not recoverable, but that in actions involving voluntary wrongs additional damages are allowed for injured feelings, which must naturally be aggravated or mitigated by the *degree* of motive actually existing; and, on the same principle, anything having a tendency to reduce the extent of the voluntary wrong may be considered in mitigation by the jury. The principles of this case have never

been departed from, but have been reasserted whenever the occasion arose: *Gt. W. Ry. Co. v. Miller*, 19 Mich. 315; *Druse v. Wheeler*, 22 Id. 444; *Ganssly v. Perkins*, 30 Id. 495; *Scripps v. Reilly*, 38 Id. 23; *Stilson v. Gibbs*, 53 Id. 280; *Watson v. Watson*, Id. 176.

*Charles B. Howell* and *Don M. Dickinson*, for plaintiff:

The direction as to damages was in accordance with the rulings of this Court. There can be no mitigation of *actual* damages, and proof of good faith does not mitigate: 3 Suth. Dam. 733, and cases; *Tefft v. Windsor*, 17 Mich. 486; *Van Deusen v. Newcomer*, 40 Id. 90; *Hill v. Taylor*, 50 Id. 551.

SHERWOOD, J. The defendant in this case was president of the Brush Electric Light Company, and had obtained from the city of Detroit the contract for lighting the city at night, by electricity displayed from towers.

By its contract with the city it was authorized to erect suitable towers for that purpose, and to anchor them, by means of guys, within the streets of the city. In so doing, and for the purpose of anchoring one of its light towers, under the direction of the defendant, the company planted one of its guy-posts, from eight to ten feet high, and about nine inches in diameter, in the street lawn, on the south side of Joy street, in front of the residence of the plaintiff, which was located at the south-east corner of Joy street and Third avenue.

The post was placed in the lawn, which was used for shade trees and ornamental purposes, about midway between the curb and sidewalk, a little one side of the walk leading from the plaintiff's yard to the carriage block, on Joy street.

The plaintiff protested against the use of his street lawn for such purpose, and forbade the defendant setting the guy-post therein. His remonstrances were unheeded, and the post was placed in the lawn.

The plaintiff was offering his house and lot for sale at the time, and considered the use made of his premises by the company a damage to the property of at least $500.

When the plaintiff learned of the intention of the defend-

ant to thus mar the beauty of his lawn, he took counsel of an attorney as to the right of the company to thus appropriate the use of his property, and was informed that the planting of the post in his lawn was without authority, and that he had the legal right to remove the same. Acting upon advice thus received, after the post was set, and the guy-line was attached thereto, he took a saw and cut into the post about four inches.

A short time thereafter the defendant came to his house, and demanded that plaintiff should pay him six dollars for the post, and setting the same, and informed him that he had ordered his arrest, and that an officer would be there in a few moments for that purpose. The officer soon came, and, as the plaintiff claims, at the instance of the defendant, arrested him, in the presence of his wife and children, and took him to the residence of the superintendent of police; and, after detaining him there about 20 minutes, without any complaint having been made or warrant issued (it then being between 8 and 9 o'clock in the evening), the officer, accompanied by the defendant a portion of the way, took him to the Fremont street station, and there searched him, and took from him his watch, some keys, a pocket-knife, and his money; and then locked him into a station cell, 8 by 10 feet, built of stone, and lined with iron, with a stone floor, and furnished with no bed or furniture, except two wooden benches, about 16 inches wide, extending the length of the cell.

That in this condition he was imprisoned throughout the night, and until about 9 o'clock the next morning, when he was taken from the cell, and, accompanied by an officer, through the street, to a police office; and there kept until about half-past 11 o'clock, when the defendant appeared, and made a complaint against him for willfully and maliciously injuring " personal property of the Brush Light Company, to-wit, one guy-post," on the twelfth day of August, 1884, "to the damage of six dollars;" and, after detaining him there until about 12 o'clock, the police justice discharged him, upon his own recognizance, he declining to plead until he could see his counsel. What further was done with the

plaintiff in the police court does not appear from the record, although we are informed by the brief of one of the counsel that the case against him was subsequently heard, and the plaintiff was discharged.

The plaintiff, feeling himself greatly aggrieved and injured in the premises, brought this suit against the defendant in the superior court of Detroit, alleging as his cause of action his wrongful detention and imprisonment, "whereby he was greatly injured in name and credit, and suffered great pain and mortification and disgrace, to his damage twenty thousand dollars."

The defendant pleaded the general issue, and gave notice that he would show on the trial thereunder "that the plaintiff willfully and maliciously and feloniously did destroy and injure the personal property of the Brush Electric Light Company, to-wit, one wooden post, which was there used to support the guy-lines pertaining to a tower, the property of said company, contrary to the statute in that behalf made and provided, and against the peace and dignity of the people of the State of Michigan;" and further gave notice that he would show "that he had reasonable and probable cause to believe that plaintiff was and had been guilty of willfully maliciously, and feloniously destroying and injuring the said guy-post, as above set forth."

The cause was tried before Judge Chipman, by jury, and a verdict obtained for $4,500 against the defendant, who now brings error.

The record contains all the testimony taken in the case upon the trial, and the charge of the court in full.

Twenty-seven errors are assigned, and most of them relied upon for reversal. Six relate to the decisions of the court overruling defendant's objection to testimony offered by counsel for plaintiff; one to the ruling of the court in sustaining the objection of plaintiff's counsel to a question put upon cross-examination. We have carefully examined the exceptions upon which these assignments are based, and are satisfied none of them are well taken.

Of the remaining errors assigned, eleven are to the refusals

of the court to charge as requested, and nine relate to exceptions taken to as many different portions of the charge of the court. An examination of the requests and the charge shows several of the defendant's requests were given by the court. The remainder were properly refused.

The exceptions needing most consideration are those relating to the charge on the question of damages. The able briefs of counsel on both sides have been carefully reviewed, and the authorities consulted, but we are unable to concur in the conclusions reached by the learned counsel for the defendant.

The court, in his charge to the jury, assumed that defendant had the right to plant the post in the lawn where he did, so that if there was any doubt or question upon that subject the charge was in the defendant's favor, and it is unnecessary to discuss that question here.

It is not questioned or disputed that the arrest was made without any warrant or other process being issued for that purpose, and whether or not it was made by direction of the defendant was properly submitted to the jury, and they found against the defendant.

The court further charged the jury that if the plaintiff was guilty of any offense in cutting the post, he was not guilty of felony, but of a misdemeanor;—

" That no arrest can be made for a misdemeanor unless by warrant, upon complaint duly made, or by an officer or bystander who actually sees the offense which constitutes the misdemeanor. In the case of felony it is different. There, upon proper information,—such information as would justify a reasonable man in acting upon it,—an arrest may be made without warrant, and by one who does not see the actual commission of the offense. For the purposes of this case, I instruct you that the arrest, if an arrest was made, being without warrant, was an illegal arrest. * * * The law of the land, under the circumstances of this case, demanded a warrant, * * * because, if made at all, it was made by a party who did not see the commission of the misdemeanor, and therefore had no authority to make the arrest."

We think these instructions stated the law applicable to the case correctly. The facts upon which they were based

61 MICH—29

were substantially undisputed, and we do not think the offense, if any was committed, was anything more than a misdemeanor, if all the testimony given upon this point is to be taken as true: 2 Cooley, Bl. 243 ; 4 Bl. Comm. 244 ; 2 Bish. Crim. Law, § 1000 ; *Black v. State*, 2 Md. 376 ; *State v. Beekman*, 27 N. J. Law, 124 ; *Hanway v. Boultbee*, 4 Car. & P. 350 ; *Rex v. Bright*, Id. 387 ; *People v. Smith*, 5 Cow. 258 ; *State v. Briggs*, 1 Ark. 226 ; 4 Brok. Comm. 5, note 5 ; *Rex v. Powell*, 2 Barn. & Adol. 75.

Upon the subject of damages the court charged the jury :

" There are two kinds of damages,—the law has divided them into two classes. * * * In the first place, there are what are called ' actual' damages. Then there are what are called ' vindictive ' or ' punitory' damages, or what our own Supreme Court calls ' added ' damages, for want of a better name. Actual damages are such compensation for the injury as would follow from the nature and character of the act. Actual damages, in this case, would be compensation for such injuries as would fall upon any man who underwent the same treatment which Mr. Ross is shown to have undergone in this case. What are those damages ? What are the elements ? There is the pain and suffering which any man would be supposed — which the average citizen would be supposed—to suffer under those circumstances. There is being shut up,—the physical discomfort. There is the sense of shame, mortification, wrong, and outrage. All these matters enter into the actual damages.

"You are to view Mr. Ross as you would any other man in that regard. You are to be guided in that matter by your common sense, because there is no other rule,—there is no other way of getting at it. Your common sense is to determine what naturally and inevitably would be the suffering of the average citizen under such circumstances ; because the law will not allow your feelings to be harrowed, will not allow you to be put to shame and mortification. In the eye of the law, those attributes of manhood,—those sentiments, those sensitivenesses, so to speak, —which come from the better quality of our nature, are matters which are not to be trifled with, any more than a man's bones or his flesh. All these things the law considers precious. All these things the law considers as subjects of injury, and for injuries of this kind the law gives compensation.

" What would the average man naturally suffer, under those circumstances, from this imprisonment,—from what took place,—from what Mr. Ross was subjected to that night? What the average man would suffer under those circumstances would be the actual damage. But, beyond actual damages, the law gives what are called 'added' damages. Those grow out of the wantonness or atrocity, so to speak, of the act. Those are given where an act is so wanton, so despotic, of so oppressive a character, or where it entails such shame, such publicity, upon a party, as to have the effect of exciting his feelings more than an act committed under less wanton, less oppressive circumstances. In such cases the law says the damages should be greater because the injury to the feelings is greater.

" Now, is that the case here? The actual damages nothing can mitigate. That which a man has actually suffered nothing can mitigate. But these 'added' damages, as they are called, may be mitigated by all the surroundings of the case. Is this a case for these added damages—these punitory, exemplary damages—in addition to the actual damages? That is for you to determine. All the circumstances of the act are to be taken into consideration.

" If you consider, under the explanation I have given you, that this is a case for these added, exemplary damages,—these damages over and beyond the actual damages,—then your next question will be whether there is anything to mitigate it ; whether there was anything in the conduct of Mr. Ross to excite Mr. Leggett to anger ; whether Mr. Leggett, under the circumstances, had a right to be angry ; whether, if angry, Mr. Ross' conduct naturally provoked it ; whether Mr. Ross did anything to bring the injury upon himself, in the respect that he naturally excited, angered, and provoked Mr. Leggett. That is for you entirely. If you think the case is one for these added or extra damages, are there facts and circumstances which will mitigate and take from them? But remember, gentlemen, above all things :

" *First.* You are to follow the rule of law I have given you.

" *Second.* You are to ascertain whether Mr. Leggett is responsible. .

" *Third.* If he is responsible, you are to give the actual damages, no matter how small or how high.

" *Fourth.* You are to ascertain whether the circumstances are such as call for added, exemplary damages, and, if so, what they should be,—whether they should be anything; whether they should be mitigated by reason of any provocation; or whether they should be rendered to their full extent."

We think this charge is within the rule best supported by the authorities, and within the spirit of the decisions, so far as any have been made in this Court, inasmuch as the arrest was clearly without authority. *Allor v. Wayne Co. Auditors,* 43 Mich. 76 ; 1 Russ. Cr. 598, 600 ; *People v. Burt,* 51 Mich. 199 ; *People v. Haley,* 48 Id. 495 ; *Drennan v. People,* 10 Id. 169 ; *Quinn v. Heisel,* 40 Id. 576 ; *Way's Case,* 41 Id. 299 ; *Com. v. Carey,* 12 Cush. 252. As to exemplary damages, see *Detroit Post & Tribune Co. v. McArthur,* 16 Mich. 447 ; *Brushaber v. Stegemann,* 22 Id. 266 ; *Fay v. Swan,* 44. Id. 544 ; *Elliott v. Van Buren,* 33 Id. 49 ; *Batterson v. Chicago & G. T. Ry.,* 49 Id. 191 ; *Ganssly v. Perkins,* 30 Id. 493 ; *Scripps v. Reilly,* 38 Id. 10 ; *Welch v. Ware,* 32 Id. 77 ; *Johnston v. Disbrow,* 47 Id. 59 ; *Druse v. Wheeler,* 22 Id. 439 ; *Friend v. Dunks,* 37 Id. 25 ; *Evening News Ass'n v. Tryon,* 42 Id. 549 ; *Livingston v. Burroughs,* 33 Id. 511 ; *Raynor v. Nims,* 37 Id. 34 ; *Hamilton v. Smith,* 39 Id. 222 ; *Tefft v. Windsor,* 17 Id. 486 ; *Vanderpool v. Richardson,* 52 Id. 336 ; *Van Deusen v. Newcomer,* 40 Id. 90 ; *Hill v. Taylor,* 50 Id. 549.

All that was proper to be given in the defendant's requests to charge was included in the foregoing instructions.

It is the complaint of the learned counsel for the defendant that the court directed the attention of the jury to damages arising from injury to the feelings, when discussing exemplary damages, as well as when charging them what constituted actual damages. We have in the above quotation from the charge all that he said upon the subject, excepted to by defendant's counsel, and we do not think the exception well taken.

It is of little consequence by what name the damages given are called, provided the case is one involving that class of injuries for which the plaintiff is entitled to recover. They may be called "exemplary," "punitory," "vindictive," "compensatory," or "added" damages. The important question always is, in every case, was the character of the wrong suffered, or injury sustained, such as may be lawfully atoned for or compensated in money.

Actual damages are those which the injured party is entitled to recover for wrongs received and injuries done when none were intended. Damages beyond these, where the injuries and sufferings were intended, or occur through carelessness or negligence amounting to a wrong so reckless and wanton as to be without palliation or excuse, are frequently and properly given, and have been variously designated by the terms above mentioned. The first are measured by known and well-defined rules. No rule can be laid down, properly measuring or limiting the damages allowable in the other class of cases, except they must not be oppressive, or such as to shock the common sense of fair-minded men; and they are therefore left to the reasonable discretion of the jury. A more definite rule cannot well be given as to these, as what would be right and just must depend entirely upon the circumstances of each particular case.

The jury, by their verdict, found the defendant guilty of the unlawful acts and trespasses to the person and feelings of the plaintiff complained of in his declaration, and if the wrongs inflicted by such unlawful acts were not intended, the lack of such intention could not prevent the pain and suffering experienced by the plaintiff by his false imprisonment, or prevent the physical discomfort—the sense of shame, mortification, outrage, and disgrace—inflicted upon and endured by the plaintiff; and, if so, they were but the natural consequences of the injury the plaintiff received by the treatment of the defendant, and they were all elements to be taken in consideration by the jury in determining the actual damages, and no error was committed by the court in so charging the jury. It is no objection to this view that the same elements, or some of them, must be considered in fixing the amount of exemplary damages, when such are given.

Nowhere in the record or briefs of counsel do we find the damages awarded in the case claimed to be excessive, provided the plaintiff's declaration should be found sustained, and that question is settled by the verdict of the jury.

The case, as presented by the record, is not one calling for any very great amount of refining upon this subject, and we

do not feel called upon, under the facts appearing in this case, to apply any technical rules, if such exist.

The record, we think, shows a fair trial, and no error is committed requiring a reversal, and the judgment must therefore be affirmed.

The other Justices concurred.