Reed, J.,
delivered the opinion of the court.
Many supposed errors are assigned, several of which I shall not find it necessary to notice. It is urged that many errors occurred in admitting and rejecting evidence. The contention appears to be well founded. The transcript from end to end bristles with the objections and exceptions of the defendant. It would be-impossible, or at least impracticable, to point them all out. It must suffice to say that during the entire trial successful efforts were made to put in evidence of failure to repair and make improvements as alleged in the first count. Plaintiffs succeeded admirably in making a case in support of the first count, notwithstanding the ruling of the court that no evidence would be received.
In the second count of the complaint the supposed evic- = tion is alleged to have occurred in April. Upon the trial it appeared by the evidence of the plaintiff, Eitel, that they made no repairs, and that in February and March they were • looking for other quarters with a view to moving.
“ Q. Did you not go to Mr. Hall and speak to him about ■ getting a building from him ? A. Yes, sir, for the reason that the building was not in shape.
*165 “ Q. Just as soon as you got a chance you were going to leave? A. Yes.
“ Q. Paid $40.00 a month? A. Yes, sir, and mighty sorry for it.”
(Redirect examination.) “ Q. When did you first make ■inquiries about a new location ? A. Some time in February or March.
“ Q. State to the jury why you made these inquiries ? A. Because the building was not put in shape, according to agreement.
■ “ Q. What did it lack ? A. It lacked shutting up the cracks in the back and keeping the dust out, and the leaks in the front room where it leaked in the roof. !
• “ Q. Anything else ? A. Had no back door so we could pull a wagon through. He had put something there, but it was worse than before on account of the dust.”
To this testimony objections were made and exceptions saved.
It also appears that notwithstanding the covenants in the lease, on the 15th of February, plaintiffs made a written demand of the defendant, requiring him to make different, specified repairs upon the building. Such writing was offered in evidence and was admitted. The defendant afterward offered proof that he had in every respect complied with the demand, and the court refused to admit it. All this irregular and inadmissible testimony, which could only have been allowed, if at all, on the first count, could not fail to influence the jury and prejudice the defendant. It also plainly appears that the plaintiffs were seeking an excuse for leaving and ah opportunity. This will become pertinent in considering the trial of the case on the second count.
The alleged eviction for which judgment was obtained was caused, if at all, by the owner of the adjoining lot — -not by any acts of the defendant; they were, as far as he was concerned, entirely beyond his control. The wall of the leased building was on the line of the adjoining lot, on which the owner entered and excavated to erect a building. It *166 first became necessary to shore up the wall of the building in question, which was promptly and properly done by the defendant. It then became apparent that the wall would have to be removed. The defendant immediately put in a temporary wooden wall with as little inconvenience as possible to the tenants, and assisted in handling and adjusting their property in the shop. While the excavation was, being continued, during a severe storm, a part of a side wall of the rear building, some four feet from the line, by the caving of the bank, fell into the excavation. This damage, as shown by the evidence, was as speedily as possible repaired by the defendant. At this point the plaintiffs abandoned the premises. Upon the trial much incompetent testimony of actual damage was admitted; some of it in regard to the business before and subsequent to the removal, which should not have been allowed. In regard to loss of stock, injury, expense of moving, etc., the testimony was vague and indeterminate, leaving it impossible for any jury to arrive at any satisfactory conclusion. Even if the defendant was chargeable for the same, taking the largest estimate of plaintiffs in regard to the actual damage sustained, it was but a trifle compared with the amount of the verdict, showing clearly that the jury awarded exemplary or punitive damages.
The first question to be determined is: Did the acts of the landlord amount to eviction of the tenants ? To render the landlord liable, the acts must either have been perpetrated by him or be acts for which he was personally responsible, or acts against which he had expressly covenanted. He was not responsible for the acts of an adjoining lot owner on his own premises. They were entirely beyond his control, and acts against which he had not covenanted, and if the acts of the adjoining owner resulted in the destruction of the building, compelling removal, it is very doubtful if any action could be maintained upon any covenant in the lease, except that of peaceable possession for the time the property was leased, and the damage could only have been the actual damage sustained, perhaps, the cost and incidental trouble of mov *167 ing, and the balance of the lease for the unexpired term, — in other words, the value of the use in the market, over and above the rent covenanted to be paid. See 3 Suth. on Dam. 149, and cases cited; Taylor’s Land. & Ten. (8th ed. ) § 317; Green v. Williams, 45 Ill. 206; Mack v. Putchin,, 42 N. Y. 167; Rhodes v. Baird, 16 Ohio St. 573.
What were the undisputed facts in regard to the falling of the second wall? The excavation of the other party was four feet from it. There came a severe storm in the night; the earth caved, and the wall fell. An injury resulting from no acts of the defendant, not foreseen or contemplated by him or his tenants. It was claimed that by such accident the greater part of the actual loss was sustained. The stock was injured by the elements, and proof was allowed of each item to charge the defendant. This was clearly erroneous. Such injuries were not the result of any act of his, nor through his agency, nor the result of any negligence. The evidence shows that defendant repaired the breach at the earliest practicable hour. The eviction, if there was one, to render the defendant liable, must have been caused by him. Plaintiffs covenanted that they would “ keep said premises in good repair during the lease at their own expense; that they had received the premises in good order and condition, and at the expiration of the time of this lease above mentioned they will yield up the said premises to the said party of the first part in as good order and condition as when the same were entered upon * * * loss by fire or inevitable accident or ordinary wear excepted.”
Under a lease containing identical covenants in Kramer v. Cook, 7 Gray (Mass.), 550, the defendants (lesseés) attempted to prove that the premises had become unsafe and untenantable by reason of the undermining and settling of the partition wall by the owner of the adjoining lot, and the court held the evidence properly excluded. It is said: — • “ The landlord is not ordinarily bound to keep the premises in repair; nor is there anything in the lease to create' such duty.” Then, after citing covenants identical with those *168 contained in this lease, proceeds, “ the falling of the wall by reason of nob being properly shored up would not seem to be an unavoidable casualty. The duty of repair would be on the lessee and not the lessor.” Also, under the covenants, it was held not only that the landlord was not chargeable, but that, “ under the provisions of the lease, there would be no abatement or suspension of rent because of such injury to the premises.” See also to same point: — Fowler v. Bott, 6 Mass. 63; Phillips v. Stevens, 16 Mass. 238; Jaques v. Gould, 4 Cush. 384; Bigelow v. Collamore, 5 Cush. 226.
“ Under an express covenant to keep and leave the premises in repair, the lessee is bound to make good any injury from any cause not resulting from the act or neglect of the landlord.” 1 Wood’s Land. & Ten. (2d ed.) 795; Phillips v. Stevens (supra); Allen v. Howe, 103 Mass. 241; Hallett v. Wylie, 3 John. (N. Y.) 44; Wiegall v. Waters, 6 Term Rep. 230; Green v. Eales, 2 C. B. 225.
In order to work a legal eviction, “the act complained of must proceed from the landlord himself or some person acting under his authority, or by or through him.” Wood’s Land. & Ten. (2d ed.) 1098; Dewitt v. Pierson, 112 Mass. 8; Gilhooley v. Washington, 4 N. Y. 217.
“ The mere fact that the premises became uninhabitable through the act of a third person to which the landlord has not contributed, does not amount to an eviction.”
“The removal of a party wall by an adjoining owner, whereby the building is made untenantable, does not operate as an eviction, which discharges the tenant from the payment of rent.” Barns v. Wilson, 8 Centl. Rep. (Pa.) 454; Carson v. Codley, 26 Pa. St. 117; Hazlett v. Powell, 30 Pa. St. 293.
Nor does it violate the covenant for quiet enjoyment. Frost v. Earnest, 4 Whart. (Pa.) 86; Dobbins v. Brown, 12 Pa. St. 75; Moore v. Weber, 71 Pa. St. 429; Ramsey v. Wilkie, 13 N. Y. Sup. 554.
In Morris v. Tillson, 81 Ill. 607, it is said: “ The intention is material. Acts of a landlord in ihterferenee with the tenant’s possession, to constitute an eviction, must clearly indi *169 cate an intention on the part of the landlord that the tenant shall no longer continue to hold the premises.” See also Upton v. Townsend, 17 C. B. 30.
Under the authorities cited, to which if necessary a large number might be added, it is clear from all the evidence in the case that there was no eviction. The injuries sustained were those which lessees were bound to repair under the covenants. It is shown that the landlord voluntarily assumed the repairs for the benefit of his tenants. So far from his conduct evincing a desire to evict, it conclusively shows his desire and efforts to retain them, and, as above shown, the tenants, long prior to the alleged eviction, were seeking other quarters and an opportunity to abandon the premises. It at once becomes apparent that they gladly availed themselves of the first circumstances that offered any supposed justification.
In 2 Wood’s Land. & Ten. (2d ed.) 1107, it is said: “The tenant must not only abandon the premises, but it must also appear that he abandoned them on account of the acts of the landlord, which are claimed to operate as an eviction ; and if his abandonment was due to other causes, in part even, he cannot set up such acts to an action for the rent.” See Edwards v. Candy, 14 Hun, N. Y. 576; Edgerton v. Page, 20 N. Y. 281; Myers v. Burns, 35 N. Y. 269.
The verdict was so disproportionate to any damage proved, it is at once apparent that much the greater portion was allowed as exemplary or punitive damage.
The statute permitting in any civil case exemplary 'damage is: Sec. 1, Acts 1889, p. 64, as follows: “ That in all civil actions in which damages shall be assessed by a jury for a wrong done to the person, or to personal or real property, and the injury complained of shall have been attended by circumstances of fraud, malice or insult, or a wanton and reckless disregard of the injured party’s rights and feelings, such jury may, in addition to the actual damages sustained by such party, award him reasonable exemplary damages.” There was no evidence whatever in the case bringing it within *170 the provisions of the statute — nothing upon which the jury could act; hence, to submit to the jury in the instructions the question, and allow it arbitrarily to evolve or assume wrongful acts and award exemplary damage was error. “ Whether there is any evidence to justify the finding of exemplary damages, is a question for the court. If there is none, it is error to submit the question to the jury.” 1 Sedg. on Dam. (3d ed.) § 387; Rose v. Story, 1 Pa. St. 190; Amer v. Longstreth, 10 Pa. St. 145; Pittsburgh R. S. Co. v. Taylor, 104 Pa. St. 306; Selden v. Cushman, 20 Cal. 56.
“ To entitle a person to punitive damages for a wrongful act there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the act.” Phila. R. Co. v. Hoeflich, 62 Md. 300. The same in principle is the language of our statute. See, also, Ross v. Leggett, 61 Mich. 445; Mattice v Brinkman, 74 Mich. 705; Schippel v. Norton, 38 Kans. 567; Wentworth v. Blackman, 71 Iowa, 255.
The jury was, evidently, misled as to the issues involved by the unwarranted admission of evidence in regard to repairs, or as to the law of the case by the instructions of the court, which, as shown above, were in one important particular erroneous and to some extent contradictory and incompatible. Such being the case the judgment must be reversed and the cause remanded.

Reversed.