JACKOVICH v GENERAL ADJUSTMENT BUREAU, INC

Docket No. 52856. Submitted December 1, 1981, at Marquette.—Decided September 7, 1982. Leave to appeal applied for.

John and Pauline Jackovich, husband and wife, had a new home erected. The basement of the home was continually flooded and the Jackoviches purchased an electric sump pump to remove the water from the basement. Subsequently, John Jackovich and George Stalo, a landscaper, entered the basement of the new Jackovich home to pump out the accumulated water with the sump pump. When Stalo removed the electrical plug on the sump pump from an outlet, a spark caused by removing the plug from its receptacle ignited a quantity of propane gas causing an explosion and flash fire. As a result of the explosion, Jackovich suffered burns over 40% of his body and Stalo died. The Jackoviches and Esther Stalo, individually and as administratrix of the estate of George Stalo, deceased, brought suit in Houghton Circuit Court against numerous defendants including the supplier of the propane, the installer of the propane line, the contractor who constructed the basement and sold the home and the manufacturers of the water heater, propane control for the boiler, and water heater control. The house was insured by Continental Insurance Company. Continental also carried the liability insurance for the defendant propane sup-

REFERENCES FOR POINTS IN HEADNOTES

[1, 14] 75 Am Jur 2d, Trial §§ 643, 698.
[2] 75 Am Jur 2d, Trial §§ 576 *et seq.*, 915.
[3] 81 Am Jur 2d, Witnesses §§ 472, 475, 479, 507.
[4] 20 Am Jur 2d, Courts §§ 82-86.
[5] 76 Am Jur 2d, Trial § 1154.
[6] 76 Am Jur 2d, Trial §§ 1166, 1167.
[7] 75 Am Jur 2d, Trial §§ 519, 527, 528.
[8] 75 Am Jur 2d, Trial §§ 521, 537.
[9] 5 Am Jur 2d, Appeal and Error § 881.
   75 Am Jur 2d, Trial §§ 393, 416.
[10] 81 Am Jur 2d, Witnesses §§ 417, 511.
[11] 5 Am Jur 2d, Appeal and Error § 891 *et seq.*
[12] 75 Am Jur 2d, Trial § 589.
[13] 74 Am Jur 2d, Torts § 8 *et seq.*

plier. Continental assigned the adjustment of the loss covered by the homeowner's policy to Dean Albrecht of General Adjustment Bureau, Inc. As instructed by Continental, a local adjuster employed by Michigan Claims Service was in charge of investigating the liability coverage of the propane supplier. Albrecht hired Boynton Engineers, Inc., to examine the scene of the accident and locate the cause of the explosion. Boynton Engineers sent an employee, Simon Choi, to conduct the investigation. While on the Jackoviches' property, Choi removed copper tubing, two flare nuts, and an elbow of the propane line from the premises. The condition of these items was important because a carbon deposit known as "flashback" would appear on the tube if a propane leak caused the explosion. The plaintiffs' attorney requested a copy of Choi's report, but that request was refused. Subsequently, plaintiffs' attorney hired his own expert to inspect the basement. Subsequently, it was learned that Choi had lost the parts that he had removed from the basement. Because those parts were no longer available for inspection, the efforts of the plaintiffs' expert to determine the cause of the explosion were impeded, and plaintiffs' attorney thus concluded that he possibly could not establish his case. The case was settled with all of the defendants except the propane supplier insured by Continental; the case against it was dismissed with prejudice. Thereafter, the plaintiffs filed suit against General Adjustment Bureau, Inc., Michigan Claims Service, Boynton Engineers, Dean Albrecht, and Continental, in Houghton Circuit Court. The court, Stephen D. Condon, J., entered judgment on a jury verdict for plaintiffs against Continental and Boynton Engineers and for no cause of action for the remaining defendants. The plaintiffs appeal and Boynton Engineers and Continental cross-appeal. *Held:*

1. The parties requested that the trial judge instruct the jury on the theories in the original underlying suit. Failure to instruct the jury on accurate, standard jury instructions pursuant to a request is error requiring reversal. Here, the trial judge erred in refusing to give the relevant standard jury instructions applicable at the time the original trial was scheduled.

2. The trial court erred in denying the plaintiffs the right to cross-examine the attorney who represented the propane supplier in the underlying suit. The propane supplier, represented by Continental, was an adverse party to the plaintiffs because their best interests were in conflict and the attorney was an agent of the propane supplier in the role he played in the settlement negotiations.

3. The jury's verdict is legally and logically inconsistent. The

jury found Continental liable for negligently selecting Choi, an employee of Boynton Engineers. Dean Albrecht, of General Adjustment Bureau, not Continental, hired Boynton Engineers. Yet, General Adjustment was found not negligent for hiring Choi. Where an inconsistent verdict is delivered, a trial judge has the obligation to remedy the verdict with or without objection by the parties. The failure to ensure that the defective verdict was remedied requires that a new trial be granted.

4. The trial judge did not err in refusing to instruct the jury on punitive damages where a claim of intentional interference with economic interest was presented to the jury. Where the conduct of a defendant is found to be intentional and the jury seeks to compensate a plaintiff for humiliation, sense of outrage and indignity, an award of exemplary damages is proper. Here, the plaintiffs' proposed instructions sought punitive damages for the purpose of punishing the defendants. Such an instruction is not recognized in Michigan.

5. The trial judge properly granted a directed verdict for the defendants in the plaintiffs' causes of action for fraud and misrepresentation, conversion, and bad faith.

6. The trial court did not err in denying Boynton's motion for a directed verdict on plaintiffs' claim of negligence.

7. The trial court did not err in excluding the testimony of the attorney for the contractor in the original underlying suit and the testimony of an employee of Continental. Here, the attorney asserted the attorney-client privilege until the trial. The trial judge did not abuse his discretion in precluding the live testimony of the employee of Continental where large portions of the employee's deposition were read into the record and the evidence was already before the jury. The plaintiffs were permitted to examine the employee on non-repetitive testimony.

8. No manifest injustice occurred in the trial judge's instruction to the jury on the plaintiffs' claim under the insurance policy for property damage coverage and, because the parties failed to object in the trial court to the instruction, the instruction will be upheld on appeal in the absence of manifest injustice.

9. The limitation period provision in the Jackoviches' insurance policy, limiting the time for bringing a suit, is reasonable and therefore valid.

10. The trial judge did not err in answering the jury's questions regarding contributory negligence because the theory of a breach of an implied warranty was at issue in the trial. A

finding of contributory negligence would not preclude damages being assessed against Continental on the theory of a breach of an implied warranty.

11. The trial judge did not err in instructing the jury on the plaintiffs' claim against Continental alleging economic interference.

12. Although the trial judge's instruction to the jury on the issue of the existence of a conflict of interest may not have been completely applicable, any error in giving the instruction was harmless.

13. The defendant's arguments that the doctrine of estoppel precluded the trial of the case because the parties had arrived upon a settlement should be rejected because Michigan recognizes the tort of interference with economic relations. Moreover, Choi's misplacement of the parts appeared to be negligent.

Reversed and remanded.

M. B. BREIGHNER, J., dissented. He would affirm. He believed that the trial judge properly instructed the jury. Because the underlying case was settled, he believed that the trial judge properly refused the defense request to instruct the jury regarding the liability or liabilities of the original eight defendants along with the defenses interposed by them. He believed that the plaintiffs should have been allowed to call the propane supplier's attorney as an adverse witness but that that error was harmless beyond a reasonable doubt. He further believed that the verdict was not legally and logically inconsistent.

### OPINION OF THE COURT

1. TRIAL — "SUIT WITHIN A SUIT" — NEGLIGENCE — JURY INSTRUCTIONS.

The litigation of a "suit within a suit" usually arises in the legal malpractice setting, however, the same rules apply to claims of negligence by insurance adjusters; a jury hearing a "suit within a suit" needs to be specifically instructed on the theories involved in the underlying lawsuit to determine if the plaintiff would have been successful in the original litigation.

2. JURY — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

A trial judge's failure to instruct a jury on applicable, accurate standard jury instructions pursuant to a request is error requiring reversal.

3. WITNESSES — CROSS-EXAMINATION.

A trial judge's denial of the right to cross-examine a witness is

proper where no actual agency relationship exists where the witness is called as the employee or agent of an opposite party (MCL 600.2161; MSA 27A.2161).

4. STATUTES — COURT RULES — CONFLICT.

Generally, the general court rule prevails where a conflict exists between a statute and a general court rule.

5. JURY — VERDICTS — INCONSISTENT VERDICTS.

The obligation to remedy an inconsistent verdict lies with the trial court with or without objection of counsel for the parties; the proper remedy is further instruction and jury deliberation.

6. DAMAGES — PUNITIVE DAMAGES — EXEMPLARY DAMAGES.

Exemplary damages may be awarded for injury to feelings and for the sense of indignity and humiliation suffered by a plaintiff because of injury maliciously and wantonly inflicted; however, an award of punitive damages for punishing a defendant is prohibited in Michigan.

7. MOTIONS AND ORDERS — DIRECTED VERDICTS.

Review of a motion for a directed verdict should be made with the proofs and reasonable inferences therefrom viewed in the light most favorable to the plaintiff.

8. MOTIONS AND ORDERS — DIRECTED VERDICTS — MEANING OF EVIDENCE.

A motion for a directed verdict is properly denied when, considering the facts in the light most favorable to the adverse party, reasonable men could differ as to the meaning of the evidence.

9. EVIDENCE — JUDGE'S DISCRETION.

The admission of evidence in a trial is within the trial judge's discretion and a judge's ruling on the evidence offered should not be upset absent a clear abuse of discretion.

10. WITNESSES — DEPOSITION TESTIMONY.

A trial judge does not abuse his discretion where he precludes live testimony of a witness where large portions of the witness's deposition were read into the record, the evidence was already before the jury and the party calling the witness was permitted to examine the witness on nonrepetitive testimony.

11. JURY — JURY INSTRUCTIONS.

A trial judge's instruction to the jury will be upheld on appeal where a party fails to object to the instruction below, unless such instruction results in manifest injustice (GCR 1963, 516.2).

12. Jury — Jury Instructions.

Refusal of a trial court to give a requested jury instruction which states the applicable law and which is supported by the evidence is error.

13. Torts — Tortious Interference With Economic Relations.

Tortious interference with economic relations is actionable in and of itself.

Dissent by M. B. Breighner, J.

14. Trial — "Suit Within a Suit".

*A plaintiff in a "suit within a suit" need not prove that he would have prevailed completely in the former suit to sustain his burden of proof; rather the plaintiff must show only that the tortfeasor was negligent, or guilty of some other tortious conduct, and that the conduct complained of increased or decreased the amount of a jury award.*

*Tercha & Daavettila,* for plaintiffs.

*Clausen, Miller, Gorman, Caffrey & Witous, P.C.,* and *Jack T. Jacobs,* for General Adjustment Bureau, Inc., and Dean Albrecht.

*Foster, Meadows & Ballard,* for Boynton Engineers.

*Baxter & Hammond,* for Continental Insurance.

Before: Beasley, P.J., and R. B. Burns and M. B. Breighner,* JJ.

R. B. Burns, J. Plaintiffs appeal and defendants, Continental Insurance Company and Boynton Engineers, Inc., cross-appeal from the verdict in a personal injury and wrongful death case. The jury found in favor of plaintiffs and against both Continental Insurance Company and Boynton Engineers, Inc., on the basis of negligence and against

* Circuit judge, sitting on the Court of Appeals by assignment.

Continental Insurance Company for wrongful interference with economic advantage.

The trial involved what is commonly referred to as a "suit within a suit". By way of background, plaintiffs Jackovich had a new home erected. Although the new house was completed, the Jackoviches refrained from moving in because a serious problem with water entering the basement existed. Attempts to remedy the leakage were unsuccessful.

In order to alleviate the problem, the Jackoviches bought an electric sump pump to remove the water from the basement. Mr. Jackovich and Mr. George Stalo entered the basement of the home to pump out the accumulated water when the accident occurred. Apparently, when the plug of the pump was removed from the outlet, a spark flew and ignited a quantity of propane causing an explosion and a flashfire. Mr. Jackovich suffered burns over 40% of his body, and Mr. Stalo eventually died from the explosion.

The propane-fired boiler installed in the home had been connected to the propane tank by the propane supplier, Northern Propane Gas Company. The Jackoviches' house was insured by Continental Insurance Company. Continental Insurance Company also carried the liability insurance for Northern Propane Gas Company.

Continental Insurance Company assigned the adjustment of the loss covered by the homeowners' policy to Dean Albrecht of General Adjustment Bureau, Inc. On the other hand, as instructed by Continental, a local adjuster employed by Michigan Claims Service was in charge of investigating the liability coverage of Northern Propane Gas Company.

Dean Albrecht hired Boynton Engineers to ex-

amine the scene of the accident and locate the
cause of the explosion. Boynton Engineers sent
their employee, Simon Choi, to conduct the investi-
gation. While on the sight of the accident Simon
Choi removed a copper tubing, two flare nuts, and
an elbow of the propane line from the premises.
The condition of these pieces was important be-
cause a carbon deposit known as "flashback"
would appear on the tube if a propane leak caused
the explosion.

Plaintiffs' attorney requested a copy of the re-
port that Choi prepared. The request was refused.
Plaintiffs' attorney twice filed motions in the cir-
cuit court to produce the report, which were de-
nied. At this point, plaintiffs' attorney had his own
expert inspect the basement.

The fact that Choi had removed parts from the
basement was not immediately apparent because
on the day of the fire the local fire chief had
removed some parts from the basement. Two
months before the original trial was to begin,
Choi's deposition was taken. The deposition re-
vealed, for the first time, that Choi had lost the
parts removed from the basement.

Based on the fact that the parts Choi removed
were no longer available for inspection, the efforts
of the plaintiffs' expert to determine the cause of
the explosion were impeded. Plaintiffs' attorney
concluded that without a more concrete finding by
his expert, he possibly could not establish his case.
Thus, the case was settled. However, Northern
Propane Gas Company, insured by Continental,
did not contribute to the settlement, and the case
against it was dismissed with prejudice. After the
original case was settled, plaintiffs instituted this
suit.

The first issue on appeal is whether the trial

judge erroneously failed to instruct the jury on the elements of damage which would have been at issue if the original suit had gone to trial.

Plaintiffs and defendants, Continental Insurance Company and Boynton Engineers, Inc., argue that because this was a derivative suit, the jury should have received the same instruction that would have been given in the underlying action. Defendants Dean Albrecht and General Adjustment Bureau argue that, since the original case did not reach trial, it is impossible to determine what instructions the original jury should have received and, therefore, the judge's refusal to instruct the jury in regard to the original action was proper.

The plaintiffs' theory of the case was that defendants' conduct reduced the chances of a suitable judgment in the original case. In order for a jury to evaluate this claim, the plaintiffs had to establish that but for defendants' actions they would have recovered a higher verdict in the initial suit than the settlement gained.

The trial judge recognized that the litigation involved two lawsuits, *i.e.,* a "suit within a suit". Yet, he failed to give the jury any guidance or specific instructions on the theories surrounding the original action. He instructed the jury on the interplay between the two lawsuits as follows:

"You are further instructed that you are to assume that in the first original case between the plaintiffs and the eight defendants that a jury, or the jury in that case, if it would have been tried and not settled, would have been properly instructed as to the plaintiff's *[sic]* theories of recovery, the damages, and the defendant's *[sic]* affirmative defenses of denial of any liability."

Although usually the litigation of a "suit within a suit" arises in the legal malpractice setting,

cases have found that the same rules apply to claims of negligence by insurance adjusters. *Gay & Taylor, Inc v American Casualty Co,* 381 SW2d 304 (Tenn, 1964). The general rule in the litigation of a "suit within a suit" was set forth in *Basic Food Industries v Grant,* 107 Mich App 685, 692; 310 NW2d 26 (1981):

"As another commentator has stated the matter:
"'A client's burden of proving injury as a result of his attorney's negligence is especially difficult to meet *when the attorney's conduct prevented the client from bringing his original cause of action* or the attorney's failure to appear caused judgment to be entered against him as a defendant. In addition to proving negligence, a client must show that but for his attorney's negligence he would have been successful in the original litigation; in effect, he must prevail in two distinct suits.' Note, *Attorney Malpractice,* 63 Colum L Rev 1292, 1307 (1963). (Emphasis added.)"

The jury, in order to determine if the plaintiffs would have been successful in the original litigation, needed to be specifically instructed on the theories involved in the underlying lawsuit. We appreciate the difficulty a trial judge confronts in determining what instructions are properly presented to a jury in a "case within a case". Nonetheless, the instructions the jury received here were vague and afforded the jury little guidance.

*Chocktoot v Smith,* 280 Or 567, 571; 571 P2d 1255 (1977), where legal malpractice was claimed, emphasized that despite some shortcomings in the system a jury in a "suit within a suit" must be regarded as the original jury. The court stated:

"The question is on what information the jury is to reach this conclusion.
"The answer seems easiest when the outcome in the

first case which is at issue in the second itself depended upon a verdict, for then one can in effect let the parties argue the first case to the second jury. That is the practical answer, although it is not a wholly logical one if the question were really to reconstruct what the earlier jury would have done. What is done, in effect, is to substitute for that question the customary legal fiction of an 'objective' standard, in this instance the probable behavior of a reasonable jury, and to let the second jury cast itself in that role." (Footnote omitted.)

The parties requested the judge to instruct the jury on the theories in the underlying cause of action. The trial judge refused the request. Failure to instruct the jury on applicable, accurate standard jury instructions pursuant to a request is reversible error. *Javis v Ypsilanti Bd of Ed,* 393 Mich 689, 697; 227 NW2d 543 (1975); *Socha v Passino,* 405 Mich 458; 275 NW2d 243 (1979). Therefore, we find that the trial judge erroneously refused to give the relevant Standard Jury Instructions applicable at the time the original trial was scheduled.

Plaintiffs next claim that they should have been allowed to cross-examine the attorney who represented Northern Propane Gas Company in the underlying suit. MCL 600.2161; MSA 27A.2161 provides:

"Sec. 2161. In any suit or proceeding in any court in this state, either party, if he shall call as a witness in his behalf, the opposite party, employee or agent of said opposite party, or any person who at the time of the happening of the transaction out of which such suit or proceeding grew, was an employee or agent of the opposite party, shall have the right to cross-examine such witness the same as if he were called by the opposite party; and the answers of such witness shall not interfere with the right of such party to introduce evidence upon any issue involved in such suit or pro-

ceeding, and the party so calling and examining such witness shall not be bound to accept such answers as true."

The trial court refused to permit plaintiffs to cross-examine the attorney concluding "that Mr. McCarthy is not an opposite party, neither an employee or an agent".

Where no agency relationship exists, a judge's denial of the right to cross-examine a witness is proper. *Thompson v Essex Wire Co,* 27 Mich App 516; 183 NW2d 818 (1970). However, attorney McCarthy's testimony falls under the ambit of MCL 600.2161; MSA 27A.2161. Attorney McCarthy represented Northern Propane Gas Company during the underlying suit. Northern Propane Gas Company, represented by Continental Insurance Company, was an adverse party to plaintiffs because their best interests were in conflict. We find that the attorney was an agent of Northern Propane Gas Company in the role he played in the settlement negotiations. See *Frazier v Hurd,* 6 Mich App 317; 149 NW2d 226 (1967).

Defendants argue that despite the mandate of the statute, the judge's ruling was proper, pursuant to MRE 611(a). MRE 611(a) provides:

"Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

The general rule is that where a conflict exists between a statute and a general court rule, the latter prevails. *In re Nathan,* 99 Mich App 492,

494; 297 NW2d 646 (1980). However, the purpose underlying MCL 600.2161; MSA 27A.2161 is to allow the truth to be brought out with great regularity. *Ferguson v Gonyaw,* 64 Mich App 685; 236 NW2d 543 (1975). This purpose is consistent with MRE 611(a). Moreover, MRE 611(c) specifically provides:

"Leading questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions."

We conclude that the trial court erred in denying plaintiffs the right to cross-examine.

Defendant Continental Insurance Company argues that the jury's verdict cannot be allowed to stand because it is legally and logically inconsistent. The jury found Continental Insurance Company liable for negligently selecting Choi, an employee of Boynton Engineers. Dean Albrecht, of General Adjustment Bureau, not Continental Insurance Company, hired Boynton Engineers, Inc. Yet, General Adjustment Bureau was found not negligent for hiring Choi.

We agree that the verdict is inconsistent. Continental Insurance Company, who was further removed from the selection process than General Adjustment Bureau, was found to be negligent. General Adjustment Bureau was excused from any negligence. When an inconsistent verdict is delivered, a trial judge has the obligation to remedy the verdict with or without objection by the parties. *Farm Bureau Ins Co v Sears, Roebuck & Co,* 99 Mich App 763, 766; 298 NW2d 634 (1980).

*Harrington v Velat,* 395 Mich 359; 235 NW2d
357 (1975), involved an action against the City of
Detroit and some Detroit police officers. A verdict
was returned against the city but not against the
police officers. The Supreme Court reversed the
decision because the city's liability was derivative.
*Harrington, supra,* 360, stated:

"However, the general rule is that where a verdict in
a civil case is inconsistent and contradictory, it will be
set aside and a new trial granted.

" 'Ordinarily, a verdict may and should be set aside
and a new trial granted where it is self-contradictory,
inconsistent, or incongruous, and such relief should, as
a rule, be granted where more than one verdict are *[sic]*
returned in the same action and they are inconsistent
and irreconcilable.' 66 CJS, New Trial, § 66, pp 197-
198."

*Farm Bureau Ins v Sears, Roebuck & Co, supra,*
769, held that the proper remedy to correct an
inconsistent verdict was "via further instruction
and jury deliberation".

Here, no action was taken to correct the incon-
sistent verdicts. The failure to ensure that the
defective verdict was remedied requires that a new
trial be granted.

The next issue plaintiffs dispute on appeal is
that where the claim of intentional interference
with economic interest was presented to the jury
the judge's refusal to instruct the jury on punitive
damages was error. The defendants argue that
plaintiffs' challenge is unmerited: the requested
instruction was a total misstatement of the law of
damages in Michigan.

Plaintiffs' proposed instruction reads as follows:

"If you find that any or all of the defendants inten-
tionally or willfully interfered with the proper handling

of plaintiffs' earlier personal injury case in a wrongful manner, you may award punitive damages to the plaintiffs from any and all defendants who acted in such a manner.

"Punitive damages may be imposed to punish a defendant for wrongful conduct which is willful and intentional."

The issue of the applicability of punitive damages usually is raised in actions for tortious interference with a contract. Yet, we find the same principles apply here to the rights of the parties undertaking litigation. Both situations are concerned with an economic expectancy.

In *American Central Corp v Stevens Van Lines, Inc,* 103 Mich App 507, 514-515; 303 NW2d 234 (1981), this Court stated:

"The terms 'punitive' and 'exemplary' damages have frequently been confused or used interchangeably. However, the focus of the two damages is different. Punitive damages are awarded solely to punish or to make an example of a defendant because of the malice or recklessness with which he acted. *Wronski v Sun Oil Co,* 89 Mich App 11, 27; 279 NW2d 564 (1979), lv den 407 Mich 863 (1979); *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976), lv den 397 Mich 828 (1976). Exemplary damages are awarded for injury to feelings and for the sense of indignity and humiliation suffered by a plaintiff because of injury maliciously and wantonly inflicted. *Ray, supra.* In short, the former focuses on 'punishing' the defendant and the latter focuses on 'compensating' the plaintiff."

In *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976), this Court discussed the circumstances under which the award of compensatory damages is proper:

"The terms 'exemplary' damages, 'punitive' damages

and 'vindictive' damages have frequently been confused or used interchangeably. However, in Michigan only exemplary damages which are compensatory in nature are allowable. They are recoverable for injury to feelings and for the sense of indignity and humiliation resulting from injury maliciously and wantonly inflicted. Recovery is restricted to the party who has received the physical injury. They are never allowed, however, for the purpose of punishing or making an example of a defendant. *Smith v Jones,* 382 Mich 176; 169 NW2d 308 (1969) (concurring opinion of Justice Adams), *Ross v Leggett,* 61 Mich 445; 28 NW 695 (1886); *McFadden v Tate,* 350 Mich 84; 85 NW2d 181 (1957); *Detroit Daily Post Co v McArthur,* 16 Mich 447 (1868); *Hyatt v Adams,* 16 Mich 180 (1867)."

More recently, the Supreme Court also has provided that an award of punitive damages for punishing a defendant is prohibited in Michigan. *Willett v Ford Motor Co,* 400 Mich 65; 253 NW2d 111 (1977); *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980).

We agree with the defendants' argument, namely, that the instruction represents a misstatement of Michigan law. Where the conduct is found to be intentional and the jury seeks to compensate plaintiffs for humiliation, sense of outrage and indignity, an award for *exemplary* damages is proper. However, the proposed instructions sought punitive damages for the purpose of punishing the defendants. Such an instruction, which requested that punitive damages be awarded solely to punish defendants, is not recognized in Michigan. See *Willett v Ford Motor Co, supra; Kewin v Massachusetts, supra.* The trial judge properly refrained from giving the requested instruction since it misstated the Michigan law of damages.

Plaintiffs and defendants raise a multitude of issues which may be disposed of summarily.

The defendants' request for a directed verdict in plaintiffs' cause of action for fraud and misrepresentation was granted. Plaintiffs claim that this was error because they established a prima facie case that Continental Insurance Company had a duty to divulge its conflict of interests. Defendants assert that the evidence showed no foundation for plaintiffs' claim of fraud and misrepresentation.

A review of a motion for a directed verdict is made with "the proofs and reasonable inferences therefrom * * * viewed in the light most favorable to plaintiff". *Humenik v Sternberg,* 371 Mich 667, 669; 124 NW2d 778 (1963). Following this standard, we find that the directed verdict was properly granted. Continental Insurance Company, aware of a conflict, made sure that the two claims were kept separate and that independent investigations were pursued. General Adjustment Bureau and Albrecht did not benefit from the alleged fraud or misrepresentation.

The granting of a directed verdict in favor of defendants was proper. The element of intent is required to support a claim of conversion. *Thoma v Tracy Motor Sales, Inc,* 360 Mich 434; 104 NW2d 360 (1960). This element was lacking where no evidence was presented to establish that Choi intentionally lost the parts.

Plaintiffs argue that the trial judge erroneously granted defendants' motion for a directed verdict on the claim of bad faith. The granting of the motion was proper. The plaintiffs base their argument on the breach of an alleged oral contract with Continental Insurance Company to share a mutual expert. The jury specifically found that there was no breach of a contract by Continental Insurance Company.

Defendant Boynton Engineers, Inc., alleges that

the trial court erred in denying its motion for a directed verdict on plaintiffs' claim of negligence against Boynton Engineers, Inc., because there was not sufficient evidence to conclude that the loss of the pertinent parts prejudiced plaintiffs' initial case. If reasonable men could differ as to inferences drawn from the evidence, a directed verdict must be denied. *Cryderman v Soo Line R Co,* 78 Mich App 465, 480; 260 NW2d 135 (1977). Here, due to the loss of the parts, the plaintiffs were deprived of a conclusive opinion, formulated by their expert, as to the origin of the explosion. Therefore, the judge's ruling on the motion for a directed verdict was proper.

The plaintiffs argue that the trial court erred when it excluded the testimony of the attorney for the contractor in the underlying suit.

The admission of evidence into trial is within the trial judge's discretion. *Jarecki v Ford Motor Co,* 65 Mich App 78, 83; 237 NW2d 191 (1975). The judge's ruling on the evidence offered will not be upset absent a clear abuse of discretion. *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959). We find that no abuse of discretion occurred here, where the attorney asserted the attorney-client privilege until the trial, thereby excluding the possibility of discovery by the defendants prior to the trial. Other attorneys representing other defendants in the original suit did testify at the trial.

Plaintiffs further assert that the trial court erroneously refused to allow an employee of Continental Insurance Company to testify. To repeat, the admissibility of evidence rests in the trial judge's discretion. *Aetna Life Ins Co v Brooks,* 96 Mich App 310; 292 NW2d 532 (1980). Where large portions of the employee's deposition were read into trial, it was not an abuse of discretion to preclude

the live testimony of the employee. The evidence already was before the jury. The plaintiffs were permitted to examine the employee on nonrepetitive testimony.

The trial judge's instruction to the jury on plaintiffs' claim under the insurance policy for property damage coverage is appealed as constituting reversible error. However, the parties failed to object below, as required by GCR 1963, 516.2. Where a party fails to object below to an instruction, absent manifest injustice, the trial judge's instruction will be upheld. *Hunt v Deming,* 375 Mich 581; 134 NW2d 662 (1965). No manifest injustice occurred here.

The limitation provision in the insurance policy, limiting the time for bringing a suit, is reasonable and therefore valid. See *Tom Thomas Organization, Inc v Reliance Ins Co,* 396 Mich 588, 592; 242 NW2d 396 (1976). The jury specifically rejected plaintiffs' claim that the company waived the limitations clause.

During jury deliberations the jury asked two questions concerning the issue of contributory negligence. The defendants protest the judge's response to the second jury question, claiming that his answers to identical questions were inconsistent. The second question, to which the judge answered negatively, inquired:

"Would a theory of contributory negligence on the part of the plaintiff in the first trial bar awarding any damages for defendants in the trial?"

The judge informed the attorneys:

"Well, I'm going to take the question in its literal sense. I'm not going to presuppose what they're referring to or anything of that kind. * * * The court's

answer is, no. Your decision is to be based solely upon the evidence presented in the present case and the court's previous instructions."

The theory of a breach of an implied warranty was also at issue in the trial. A finding of contributory negligence would not preclude damages being assessed against defendant Continental Insurance Company on the theory of a breach of an implied warranty. Therefore, the trial judge's ruling was proper.

Defendant Continental Insurance Company next contends that the plaintiffs' claim of economic interference erroneously was submitted to the jury. Plaintiffs counter that the instruction presented clearly stated the applicable law and was properly before the jury.

A trial court is required to give the jury instructions that a party requests if they are applicable and accurately state the law. *Richman v City of Berkley,* 84 Mich App 258; 269 NW2d 555 (1978). Evidence was presented during the trial which could support a finding that Continental Insurance Company did interfere with the plaintiffs' rights. Therefore, it was an issue properly before the jury. We find no fault with the exercise of the trial judge's discretion in presenting the instruction to the jury.

The instruction the trial judge gave to the jury on the issue of the existence of a conflict of interest is protested by defendant Continental Insurance Company as being misleading, because the trial judge did grant a directed verdict in defendant's favor on this precise theory. Plaintiffs retort that the instruction merely outlined the duties imposed on the insurance carrier, and in no way prejudiced Continental's case.

The instruction at issue provided:

"Now, you are further instructed that where an insurance company assumes the duty of defending claims against its insured, the company is deemed to have a fiduciary duty to its insured and, therefore, where a conflict of interest arises between the insurer, as agent, and the insured, as principal, conduct of the company will be subject to closer scrutiny than that of an ordinary agent because of the adverse interests."

Although the instruction may not have been completely applicable, any error was harmless.

Lastly, defendants Boynton Engineers, Inc., and Continental Insurance Company contend that the doctrine of estoppel precluded the trial of this case because the parties had arrived upon a settlement. We reject defendants' argument that no cognizable claims were presented at trial. The law of Michigan recognizes the tort of interference with economic relations. *Wilkerson v Carlo,* 101 Mich App 629, 632; 300 NW2d 658 (1980). Moreover, Choi's misplacement of the parts did appear to be negligent.

For the above reasons, the case is reversed and remanded for a new trial.

BEASLEY, P.J., concurred.

M. B. BREIGHNER, J. *(dissenting).* I respectfully dissent.

I am convinced that Judge Condon gave proper instructions to the jury. Plaintiffs presented their case on the theory that defendants' conduct in the underlying suit maximized defendants' chances of victory in that case. The conduct complained of lead plaintiffs to settle the underlying products liability-negligence claim for an amount less than a verdict which would have otherwise been returned.

Because the underlying case was settled, the

trial court properly refused the defense request to instruct the jury concerning the liability or liabilities of those eight defendants, along with the defenses interposed by them. There was evidence before the jury as to possible verdict ranges in the underlying case. The court told the jurors that the jury in the underlying suit "would have been properly instructed as to plaintiffs' theories of recovery, the damages and the defendants' affirmative defenses and denial of any liability". This was a proper instruction.

The instruction as given deprived the parties of nothing and added nothing to the jury's burden. Plaintiffs' case went to the jury on three theories: negligence, loss of economic advantage, and conflict of interest. Plaintiffs had to prove that defendants' tortious activity forced a settlement at a lower amount than a jury might have awarded. The issue before the jury was not the liability, if any, of the defendants in the underlying suit.

In this Court's only real look at the problem presented here, *Basic Foods Industries, Inc v Grant,* 107 Mich App 685; 310 NW2d 26 (1981), the Court concerned itself with the quantum of proof needed to sustain a verdict in a malpractice action against an attorney. In doing so, it limited the "suit within a suit" requirement, as a matter of sound public policy, to a limited number of situations where trial of the first case in the second case could not be avoided. In *Basic Foods Industries, Inc,* we said that a plaintiff in such an action need not prove that he would have prevailed completely in the former suit to sustain his burden of proof, rather the plaintiff must show only that the tortfeasor was negligent, or guilty of some other tortious conduct, and that the conduct complained of increased, or, as in this case, decreased, the amount of a jury award.

I believe my position is supported by looking at the jury verdict form that was returned by this jury. The jury's answers to questions one and two clearly indicate that they found that the plaintiffs would not have prevailed at trial because of the missing copper tubing. Thus, any instruction that the trial court would have given as it concerned the eight defendants in the former proceedings would have been irrelevant. While it is true that this jury was asked to evaluate the plaintiffs' case against those eight defendants and to say whether plaintiffs would or would not have been successful, depending on the presence or absence of the one key piece of evidence, the issue here was the tortious conduct of the defendants in this case and the damages to be awarded as a result of that conduct.

I agree that plaintiffs should have been allowed to call as an adverse party and to cross-examine the attorney who represented Northern Propane Gas Company at the underlying proceedings. However, the trial court's error was harmless beyond a reasonable doubt. The record reflects that this attorney was on the witness stand for a great length of time. No attempt was made to impeach this witness under MRE 607. Under these circumstances, and especially when impeachment was not even attempted, no reversible error could result from the trial court's ruling.

I conclude that the verdict was not legally and logically inconsistent. I do not agree with my brothers that the jury found Continental Insurance Company liable for negligently selecting Choi as an engineering expert. This may have been the jury's finding, but, also, it may not have been its finding. The jury's inquiry regarding negligence of Continental Insurance Company was not limited

solely to the contention that this defendant was negligent in selecting an unqualified expert witness. The jury was also advised of plaintiff's other allegations. Additionally, plaintiffs claimed that Continental refused to provide a copy of the report of Mr. Choi to plaintiffs' attorney, and that this caused delay which in turn resulted in plaintiffs' loss. Moreover, plaintiffs alleged that Continental wrongfully dealt with the conflicting interest of plaintiffs and Northern Propane and that Continental negligently made representations to the trial court at the hearing on the motions to produce.

I would affirm.