TYLER *v.* WRIGHT.

1. ADVERSE POSSESSION—PRESUMPTIONS—PARENT AND CHILD.
    Possession by the father of realty belonging to children who are of age and on unfriendly terms with their father, is not presumed to be in subordination to their title.

2. SAME—EVIDENCE—SELF-SERVING DECLARATIONS—WILLS.
    Although self-serving declarations contained in a will are not competent evidence to support testator's title to real property by adverse possession, other statements contained in the instrument apparently disparaging his title must be construed in connection with the more favorable ones and with the fact that he assumed to have title by attempting to devise the property.

3. EVIDENCE—WILLS—RECITALS.
    Recitals of a will conveying realty, made subsequently to a life lease of the property, cannot affect the title of the life tenant.

4. ADVERSE POSSESSION—HOSTILE CHARACTER—TRIAL.
    Where a father occupied a store building and lot, for more than fifteen years after the death of his wife who had owned

the property, and whose children obtained title by descent at her decease, being of full age and married, and where the father built at his own expense a building on the premises, and after his wife's death attempted to convey the property by a life lease, and to dispose of it by his will, it was a question of fact whether his occupancy was adverse.

Error to Berrien; Coolidge, J. Submitted January 6, 1911. (Docket No. 42.) Decided March 13, 1911.

Ejectment by Ida N. Tyler, against Addie Wright, Louis Pector, and Jacob Goodman. A judgment for plaintiff on a verdict directed by the court is reviewed by defendants on writ of error. Reversed.

*William C. Hicks*, for appellants.

*Gore & Harvey*, for appellee.

BLAIR, J. This is an action of ejectment to recover the possession of "that part of lot 6, block 23, of the original plat of the village (now city) of Benton Harbor, Berrien county, Mich., described as commencing at the northeast corner of said lot 6, running thence westerly along Main street 18 feet; thence southerly 66 feet, to a point which is 18 feet from the easterly line of said lot 6; thence easterly to a point on the easterly line of said lot 6, which is 66 feet from the northeast corner of said lot 6; thence northerly on said line of said lot 6, to the place of beginning." It is conceded that plaintiff is the owner of the record title. Defendant Addie Wright claims under a life lease from John Thomas, Sr., the validity of which depends upon title claimed to have been acquired by him by adverse possession. The other defendants are her tenants.

In 1863 John Thomas, Sr., then the owner of the premises in question, conveyed them, through an intermediary, to his wife, Catherine I. Thomas. In 1880 Mrs. Thomas signed and handed to her husband a deed to her daughter, Catherine Sullivan, which was afterwards ordered

canceled by this court. The facts with reference to this deed are fully stated in *Thomas* v. *Sullivan*, 138 Mich. 265 (101 N. W. 528). Catherine I. Thomas died in September, 1885, leaving, surviving her, her said husband, their said daughter and their son, John. Prior to his wife's death, Mr. Thomas erected, at his own expense, a store building 19 feet 6 inches front by 66 feet in depth, 18 feet of which covered the premises on lot 6 described in the declaration, the remaining 1 foot and 6 inches being on lot 5. This 1 foot 6 inches, covering the east wall of the store building and 12 inches inside, was deeded by Mr. Thomas to the defendant Wright July 13, 1900. On February 9, 1901, Mr. Thomas executed and delivered to the defendant Wright a life lease of the premises described in the declaration. On April 10, 1901, he executed his will, which was duly probated, devising the land in question—

"To my two children, John Thomas, now of Coloma, county and State aforesaid, and Catherine Sullivan, of St. Joseph, same county and State, share and share alike. This accords with the will of my wife, Catherine I. Thomas, made verbally to myself, that whereas my son had forced me out of the tanning business, to the detriment of my business as a whole, and in disregard of any duty he might owe to parents, a deed was made and given into my keeping, with the injunction of a mother's love that should my son do better the deed should be destroyed and both children share alike.

"After this I built the store upon a portion of lot 5 at my own cost and expenses, which said portion of lot 5, with all appurtenances, I have since sold in consequence of my daughter's refusal to assist when in need.

"I do further give and bequeath unto Addie Wright, who has been my housekeeper, clerk in the store and general business manager for the past fifteen years, all the personal property, notes, book accounts, moneys, shop fixtures, furniture, tools, utensils, and machinery, which may be left after paying my just debts and plain funeral expenses, with all of which she is cognizant and best qualified to settle to her use and ownership forever."

Mr. Thomas died on the 15th day of August, 1901. At

the time of their mother's death, the children were of age and married. From the time of his wife's death to his own decease, Mr. Thomas made repairs, paid taxes, and used and controlled the premises, paying no rent therefor, and defendant Wright continued in possession after his death. After the store building was constructed by Mr. Thomas, he and his wife lived in rooms above the store, and he carried on business in the store and controlled and treated the property substantially the same as he did after his wife's death. The circuit judge directed a verdict for plaintiff, and defendants bring the case to this court for review upon writ of error.

We are of the opinion that the circuit judge erred in refusing to submit the question of title by adverse possession to the jury. Ordinarily the character of the possession in such cases is a question for the jury. Undoubtedly the close relationship of parent and children has an important bearing in determining whether the possession of the father of the lands of his children is adverse or subordinate to their title, and, in the absence of a contrary showing, particularly in the case of minor children, may raise a conclusive presumption of possession in subordination to their title and for their benefit. 1 Am. & Eng. Enc. Law (2d Ed.), p. 821; 1 Cyc. p. 1050; *Silva* v. *Wimpenney*, 136 Mass. 253; *Allen* v. *Allen*, 58 Wis. 202 (16 N. W. 610). In the present case the children were of full age, married, with homes of their own, and there is no evidence that they were even on friendly terms with their father. On the contrary, if the will is to be regarded as competent evidence, their relations seem to have been unfriendly. We do not think that the mere relationship under the facts of this case raises any conclusive presumption that the father's possession was in subordination to the title of the daughter and son. Plaintiff's counsel contend, however—

" That the attempted delivery of the deed to Catherine I. Sullivan by John Thomas, Sr., as described on page 34

of the record, was a recognition by him that he did not hold the title. By this act he recognized that the title was in Catherine I. Thomas at the time of her death, and that by her deed, and her deed alone, could the property be transferred, and that he himself had no right or power to convey title.

"'The possession of one who recognizes or admits title in another, either by declaration or conduct, is not adverse to the title of such other until such occupant has changed the character of his possession.' 1 Cyc. p. 1033.

"In this connection we contend that the conduct of John Thomas, Sr., in attempting to deliver said deed to Catherine I. Sullivan, was a disclaimer of title, 'and, where the occupant of land expressly disclaims title in himself, he cannot acquire title by adverse possession.' 1 Cyc. p. 1029."

In support of this contention, the testimony of defendant Wright is cited as follows:

"*Q.* You were a witness in the trial of *John Thomas, Jr.,* v. *Catherine Sullivan,* were you not?

"*A.* I think, if I remember right, I was.

"*Q.* At that time in regard to this deed did you not testify as follows:

" '*Q.* Will you tell us who brought the deed in?

" '*A.* John Thomas, Sr.

" '*Q.* Tell us what was done, what was said there at that time.

"'*A.* I think that at that time he asked Mr. Hicks if the deed would hold water. And I think Mr. Hicks made the statement that the deed was all right, it was a genuine warranty deed; and Mr. Thomas I think made a statement of some little affairs that I couldn't just remember or repeat the whole conversation, and he said that that property after his death went to Mrs. Sullivan, and, if I remember right, Mr. Hicks took the deed, read it, and handed it to Mrs. Sullivan, and she read the deed.'

"*Q.* Did you not so testify?

"*A.* I think probably I did."

This transaction occurred in 1893 or 1894, and counsel claim "was sufficient to justify the court in holding that John Thomas, Sr., did not hold the land adversely. But in the will of John Thomas, Sr., we find a positive allegation that this deed was of force and effect." If Mr.

Thomas informed Mrs. Sullivan that the property went to her after his death, this would, at least, admit of the inference that he claimed the right to hold it until that time, and the statement relative to the deed is to be considered in connection with the fact that he was assuming to dispose of the property by the will. While self-serving statements in support of his title or his assuming the right to dispose of the property would not be competent evidence in support of his title, still statements in the will claimed to be in disparagement of his title must be construed with reference to the whole will, the fact that he assumed the right to make it, and that he must have known that the deed had been held invalid by this court. So construed, we do not think the statement in the will is necessarily conclusive of his recognition of the title of his children. Moreover, the will was made two months after the alleged life lease to defendant Wright, and its recitals were not competent as against her title. Immediately upon the death of Mrs. Thomas, title to this property vested in the son and daughter, and a right of action accrued to them to enforce their right to possession. *Patterson* v. *Dryer*, 98 Mich. 564 (57 N. W. 814); *Ward* v. *Nestell*, 113 Mich. 185 (71 N. W. 593). Unless Mr. Thomas occupied the premises in subordination to, and in recognition of, their title, he acquired the title by adverse possession, and defendants were entitled to a verdict. Whether his occupation was hostile or subordinate was, in our opinion, a question of fact for the jury.

The judgment is reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD, HOOKER, and STONE, JJ., concurred.