JOHNSON v CORBET

Docket No. 72360. Argued March 5, 1985 (Calendar No. 5).—Decided
November 13, 1985.

Andrew Johnson brought an action in the Baraga Circuit Court
against Pat Corbet, William Emery, doing business as Bella
Vista Bar, and Jack Peterson, doing business as Buckhorn Bar
and Swede's Bar, seeking damages resulting from an assault
and battery by Pat Corbet after consuming intoxicating liquor
at the bars. The jury returned a verdict of no cause of action in
favor of Emery, and the court, Stephen D. Condon, J., entered
judgment on a jury verdict for the plaintiff against Corbet and
Peterson. The Court of Appeals, CYNAR, P.J., and J. H. GILLIS
and WAHLS, JJ., reversed in an opinion per curiam, holding
that the court erred in refusing to give a Standard Jury
Instruction requested by the defendant (Docket No. 65951). The
plaintiff appeals.

In an opinion by Justice RYAN, joined by Justices BRICKLEY,
CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

In civil actions, the failure of the trial court to give an
accurate, applicable, and properly requested Standard Jury
Instruction should *not result in automatic reversal on appeal;* a
jury verdict should be vacated only where the failure to do so
would be inconsistent with substantial justice.

1. Where an accurate and applicable Standard Jury Instruc-
tion has been properly requested by a party, it should be given
by the trial court if the court gives any instruction on the
general subject covered by the requested instruction. It remains
the duty of the trial court, which cannot be delegated to
counsel, to determine the subject matter of the instructions to
be given to the jury and the applicability of the particular
Standard Jury Instruction requested by counsel. Merely be-
cause the evidence in a case may include the subject matter of
a Standard Jury Instruction does not mean that the court,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Appeal and Error §§ 810 *et seq.*

[1-6] Am Jur 2d, Trial § 610.

Construction of statutes or rules making mandatory the use of
pattern or uniform approved jury instructions. 49 ALR3d 128.

upon request of counsel, is automatically required to read every standard instruction which might tangentially touch on the subject matter. It is for the trial court to determine when a standard instruction is applicable, not in an abstract or theoretical sense, but in the context of the particular case with due regard for the parties' theories of the case and counsel's legitimate desire to structure final argument in relation to anticipated jury instructions. On appeal, reversal for failure to give an accurate, applicable, and properly requested Standard Jury Instruction should obtain only where the failure resulted in such unfair prejudice to the complaining party that failure to vacate the jury verdict would be inconsistent with substantial justice.

2. In this case, the refusal of the trial court to give the requested Standard Jury Instruction, although error, did not unfairly prejudice the defendant. A failure to vacate the jury verdict on appeal would not have been inconsistent with substantial justice.

Justice LEVIN, concurring, stated that *Javis v Ypsilanti Bd of Ed,* 393 Mich 689 (1975), did not require automatic reversal where a trial court fails to give an applicable Standard Jury Instruction. Under *Javis,* where such failure occurs, there is a presumption of error, but the error is rebuttable upon a showing that the failure could not possibly have prejudiced the party challenging the failure. Thus, the rule of *Javis* need not be rescinded.

The court rule applicable to correction of error speaks in terms of substantial justice: The question of reversal is controlled by determination of whether the error was prejudicial. Instructional error must be proved to be harmless, not proved to be harmful; prejudice must be disproved, not proved. In civil cases, the harmlessness of the error need not be established beyond a reasonable doubt; rather, there must be very clear evidence that the error was harmless. Requiring error to be proved harmless by very clear evidence has minimized the risk of enforcing a judgment that was quite possibly influenced by error without requiring reversal when it is highly improbable that an error contributed to the judgment.

Reversed.

Chief Justice WILLIAMS, dissenting, stated that the rule requiring presumption of prejudicial error and automatic reversal on appeal where a trial court omits or deviates from an applicable and accurate Standard Jury Instruction requested by counsel should not be replaced by a rule which would require reversal only where failure to do so would be inconsistent with

substantial justice without a more fully developed record regarding the extent to which the Standard Jury Instructions are used. If mandatory use of the instructions is being observed with few exceptions, the "presumption of prejudice" sanction will be seldom used and provide little burden. If, however, the mandatory rule would not be observed without the sanction, it would not be good law to lose its advantage.

127 Mich App 804; 339 NW2d 648 (1983) reversed.

OPINION OF THE COURT

1. APPEAL — STANDARD JURY INSTRUCTIONS.

In civil actions, the failure of the trial court to give an accurate, applicable, and properly requested Standard Jury Instruction should not result in automatic reversal on appeal; a jury verdict should be vacated only where the failure to do so would be inconsistent with substantial justice (MCR 2.516, 2.613).

2. TRIAL — STANDARD JURY INSTRUCTIONS.

When an accurate and applicable Standard Jury Instruction has been properly requested by a party, it should be given by the trial court if the court gives any instruction on the general subject covered by the requested instruction; it remains the duty of the trial court, which cannot be delegated to counsel, to determine the subject matter of the instructions to be given to the jury and the applicability of the particular Standard Jury Instruction requested by counsel (MCR 2.516).

3. TRIAL — STANDARD JURY INSTRUCTIONS.

A trial court, merely because the evidence in a case may include the subject matter of a Standard Jury Instruction, upon request of counsel, need not automatically read every Standard Jury Instruction which might tangentially touch on the subject matter; it is for the trial court to determine when a standard instruction is applicable, not in an abstract or theoretical sense, but in the context of the particular case with due regard for the parties' theories of the case and counsel's legitimate desire to structure final argument in relation to anticipated jury instructions (MCR 2.516).

CONCURRING OPINION BY LEVIN, J.

4. TRIAL — STANDARD JURY INSTRUCTIONS.

*Failure of a trial court to give an applicable Standard Jury Instruction raises a presumption of error which may be rebutted upon a showing that the failure could not possibly have prejudiced the party challenging the failure.*

5. TRIAL — STANDARD JURY INSTRUCTIONS — HARMLESS ERROR.

*In civil cases, the harmlessness of an error in a trial court's failure to give an applicable Standard Jury Instruction need not be established beyond a reasonable doubt; rather, there must be very clear evidence that the error was harmless (MCR 2.613).*

### DISSENTING OPINION BY WILLIAMS, C.J.

6. APPEAL — STANDARD JURY INSTRUCTIONS.

*The rule requiring presumption of prejudicial error and automatic reversal on appeal where a trial court omits or deviates from an applicable and accurate Standard Jury Instruction requested by counsel should not be replaced by a rule which would require reversal only where failure to do so would be inconsistent with substantial justice without a more fully developed record regarding the extent to which the Standard Jury Instructions are used (MCR 2.516[D][2]).*

*Tercha & Daavettila* (by *Robert T. Daavettila*) for the plaintiff.

*Peacock, Ingleson, Vinocur & Brewster* (by *John D. Peacock*) for the defendant.

RYAN, J. We granted leave to appeal in this case, and in *Moody v Pulte Homes, Inc,* 423 Mich 150; 378 NW2d 319 (1985), decided today, primarily in order to reconsider the rule announced in *Javis v Ypsilanti Bd of Ed,* 393 Mich 689, 702-703; 227 NW2d 543 (1975), which states:

Where there is an omission of, or deviation from an applicable and accurate SJI [Standard Jury Instruction], prejudicial error will be presumed; provided that the erroneously omitted SJI was properly requested at trial; and, provided that in those cases where error is charged as a result of a deviation from a SJI, said deviation was brought to the attention of the trial court prior to the commencement of jury deliberations.

Although four issues are presented for decision,

all are ultimately concerned with the question whether we should continue to adhere to the requirement of *Javis* that a trial court's failure to give an accurate, applicable, and properly requested SJI will result in automatic reversal without regard to any prejudice to the complaining party.

We conclude that in light of the standard of review we adopt today for review of instructional errors arising from failure to utilize or departure from the language of the SJI, the decision of the Court of Appeals in this case must be reversed.

This case arose out of the October 5, 1980, beating of plaintiff Andrew Johnson by defendant Patrick Corbet on a sidewalk in L'Anse, Michigan. Plaintiff's claim against Corbet is based on assault and battery, while his claim against the other defendants is based on the Dram Shop Act. MCL 436.22(5); MSA 18.993(5). Defendant William E. Emery, doing business as Bella Vista Bar, is not a party to this appeal because the jury returned a verdict of no cause of action in his favor. Plaintiff obtained a $200,000 verdict against defendants Corbet and Jack Peterson, doing business as Buckhorn Bar and Swede's Bar. Peterson's motion for a new trial or, in the alternative, for remittitur was denied. The Court of Appeals reversed.[1]

---

[1] 127 Mich App 804; 339 NW2d 648 (1983). The Court of Appeals per curiam opinion accurately summarized the testimony relevant to this appeal:

"Defendant Corbet was called as a witness on behalf of the plaintiff. Defendant Corbet testified that prior to the date of the incident herein, October 5, 1980, he had been drinking continuously for a week. On October 5, 1980, he allegedly consumed eight cans of beer before going out to the Bella Vista Bar, where he allegedly drank blackberry brandy and beer. Defendant Corbet stated that, after leaving Bella Vista, he and Warren Selden consumed intoxicating beverages at the Buckhorn Bar, Swede's Bar, and the Buckhorn Bar again. He is an alcoholic who has received repeated treatment and attributes his violent temper to the consumption of intoxicants. He had at sometime in the past been convicted of burglary in Chicago.

At trial, plaintiff called Corbet as an opposite party witness. See MRE 607(2)(B) and MCL 600.2161; MSA 27A.2161. Although named a defendant in the suit, a default had been entered against Corbet prior to the commencement of trial. A default judgment, however, had not been entered against him. In response to questions put to him by defendant's counsel, Corbet testified that he had once been convicted of burglary in Chicago. The date of the conviction was never specified. When the examination of Corbet was concluded, Warren Selden, who was Corbet's drinking companion on the day in question, was called as a witness for plaintiff and, upon cross-examination by counsel for Peterson, stated that he had been convicted of "larceny from a building" in 1978 and "bad checks" in 1967. No objection was registered to the evidence of the prior convictions of either witness.

At the close of all the evidence, the trial court excused the jury and discussed with counsel their requests for instructions to the jury.[2] At the outset, the court stated:

> *The Court:* You aren't going to be able to decide this afternoon those [instructions] that you'd like

"Warren Selden, called as a witness by the plaintiff, stated that he had been drinking on October 4, 1980, and that he had consumed several cases of beer on October 5, 1980. He admitted that his testimony regarding the entire incident was not very reliable. He testified that he had been convicted of larceny from a building in 1978.

"The testimony of bartenders and employees of Peterson who worked in his bars on the day of the incident indicated that they had not served defendant Corbet on the day in question, and only one of them observed him anywhere near the bars." 127 Mich App 806-807.

[2] At the pretrial conference, the trial court had issued the following order:

"Trial briefs: Covering any and all issues and written requests for instructions, together with supporting authority therefore [*sic*], to be filed with the court on or before the selection of the jury for trial of said cause."

to have given and those that you would not like to have given. I'm going to tell you the ones that I'm going to give and then you can reserve your objections to them until after I've given them and we can go from there. There are some other matters that pertain to your instructions that are much more important that I think we'd better get to before we lose any more time.

As to all of your requests—let me just refer to my notes. *I will give pretty generally all of your requests that are the standard jury instructions. Those that I do not feel that are applicable or are repetitious and otherwise, I will indicate those I will not give.* [Emphasis added.]

Defendants Peterson and Emery had previously filed written requests for instructions to the jury. Peterson's requests did not include SJI2d 5.03. Emery's did.

SJI2d 5.03, states:

Impeachment by Proof of Conviction of Crime

In deciding whether you should believe a witness you may take into account the fact that [*he/or/she*] has been convicted of a crime and give that fact such weight as you believe it deserves under the circumstances.

After a brief discussion with counsel concerning their requests for instructions, the following occurred:

[*Counsel for Defendant Peterson*]: Your Honor, I'd like to add one more. I'd like to ask that Standard Jury Instruction 5.03 on impeachment by proof of conviction of crime be given.

*The Court:* That'll be denied. That takes care of that.

[*Counsel for Defendant Peterson*]: All right.

*The Court:* You can take your objection to it.

[Defendant] Emery's requests, I think you've requested 4.06 too, Mr. Hood. That will not be given. Conviction of a crime, 5.03 will not be given.

After the court instructed the jury, Peterson's counsel objected to the court's refusal to give SJI2d 5.03. The trial court noted the objection and stated, once again, that the instruction would not be given.

The Court of Appeals reversed because the trial judge failed to include in his jury instructions SJI2d 5.03 as requested by Peterson in his proposed instructions to the jury. 127 Mich App 804; 339 NW2d 648 (1983). In reversing, the Court of Appeals held that since SJI2d 5.03 was accurate, applicable, and had been requested by Peterson, the trial court was duty bound to give it, and its failure to do so was error requiring reversal as a matter of law, citing *Javis, supra.* We granted plaintiff's application for leave to appeal, and ordered that this case be argued and submitted together with *Moody, supra.* 419 Mich 869 (1984).

Plaintiff now brings several assignments of error which amount essentially to four claims:

I. Since it was not shown that Corbet's prior conviction for burglary occurred within ten years of the time of trial, as required by MRE 609, evidence of the prior conviction was not admissible and thus no instructions need have been given concerning it.

II. SJI2d 5.03 was not properly requested by defendant Peterson because his request was not made timely, according to the trial court's pretrial order.

III. The issue of the trial court's failure to give SJI2d 5.03 was not preserved for appellate review because it was not raised in a motion for a new trial.

IV. The presumption of prejudicial error rule announced by this Court in *Javis* should not be deemed to be conclusive.

I

Plaintiff asserts that because there was no showing that Corbet's burglary conviction was obtained, or that he was released from confinement for the conviction within ten years of the trial in this case, required conditions of admissibility of such evidence under MRE 609(b),[3] no "adequate evidentiary foundation" was established for admission of the prior conviction. Therefore, "SJI2d 5.03 was simply not applicable," and the trial court did not err in refusing to give it. Plaintiff adds:

> Since Defendant-Appellee Peterson failed to produce the foundation required by MRE 609 to support SJI2d § 5.03, he should not complain on appeal that the Standard Jury Instruction was not given.

Defendant responds that the plaintiff "is confusing the Rules of Evidence with the Standard Jury Instructions," and "cannot now rely upon a rule of evidence to keep out evidence that he gratuitously introduced himself by putting the Defendant Corbet on the stand for cross-examination, putting the witness Selden on the stand as one of the witnesses, and then introducing the deposition of the Defendant Corbet without qualification." We agree.

Proof of Corbet's prior conviction was elicited by Peterson on cross-examination. No objection was registered to the evidence by any party, and any deficiency in the foundational requirements for

---

[3] MRE 609:

"(b) Time Limit.

"Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date."

admissibility of the burglary conviction has been waived. Whether evidence of the conviction might have been excluded by the trial court as too remote had it been shown, for example, that the conviction was obtained more than ten years prior to the trial, is speculation at best. No such objection was made. Once the evidence was received, the jury was entitled, indeed required, to consider it. Since evidence of the burglary conviction was before the jury, SJI2d 5.03 was applicable, and the defendant is not foreclosed from complaining on appeal that the requested instruction was not given.

Plaintiff also contends that the instruction on prior convictions was inapplicable to Selden's testimony. The theory is that Selden's testimony was of no probative worth in the case because Selden testified that he was unable to remember the events of the day in question, or even whether he was with Corbet on that occasion because he was intoxicated, having consumed one and one-half to two cases of beer that day. Plaintiff argues:

> A close review of Selden's testimony reveals that he offered no relevant or material testimony. He gave no assistance to either Plaintiff or Defendant's position.
>
> \* \* \*
>
> Thus, Selden was really a "non-witness" and the sole purpose in his being called to testify was to demonstrate to the jury that all possible known information was being presented for their consideration.
>
> \* \* \*
>
> However, since Selden's testimony contributed nothing to the case, his credibility was not at issue and therefore, SJI2d 5.03 was without significance or application as to him.

The short answer to plaintiff's argument is that Selden's testimony, having been offered by plaintiff and received by the court, was before the jury for its consideration, and its worth was for the jurors to decide. Once a witness is sworn and gives evidence, no matter how minimal the probative force of the testimony may be, the significance of the evidence and the credibility of the witness who supplied it are before the jury to assess. *Dalton v Grand Trunk W R Co,* 350 Mich 479, 486; 87 NW2d 145 (1957); *Dempsey v Miles,* 342 Mich 185, 193; 69 NW2d 135 (1955); *Sebright v Moore,* 33 Mich 92, 93 (1875). While it is entirely possible that Selden's testimony was so lacking in materiality or relevancy that it might, upon timely objection, have been excluded or, if received, stricken upon timely motion, no such objection or motion was made. Plaintiff offered no objection to defense counsel's cross-examination inquiry of Selden concerning his prior criminal record. That evidence was intended, of course, to impeach the witness' veracity. Plaintiff will not now be heard to assert that Selden's testimony had no relevancy and should not have been received, thus rendering the witness' veracity immaterial and SJI2d 5.03 inapplicable. We think SJI2d 5.03 was applicable to Corbet's and Selden's testimony.

II

Plaintiff claims that the defendant failed to preserve for appeal the issue of the trial court's failure to give SJI2d 5.03 because the defendant did not properly request the instruction and may not rely upon his codefendant's (Emery's) timely request for it. Plaintiff further claims that, at any rate, the issue has not been preserved for appeal because the defendant did not raise the matter in a motion for new trial.

We reject both arguments.

It is undisputed that the trial court's January 7, 1982, pretrial order directed that "written requests for instructions, together with supporting authority, to be filed with the court on or before the selection of the jury," and that although Peterson's counsel filed a list of written requests for certain jury instructions, SJI2d 5.03 was not among them. The list of written requests filed by counsel for Emery included SJI2d 5.03. Nevertheless, at the close of all the proofs and while discussing with the court the proposed jury instructions, counsel for Peterson specifically requested, albeit orally, that the court give SJI2d 5.03. The court denied the request, and in the same breath declared that Emery's previously filed written request for the same instruction likewise would not be given. The court gave no reason for the ruling, and did not suggest that the request by Peterson was denied as being out of time or that Emery's similar request was denied as lacking merit.

Trial courts have the discretion to entertain additional requests for jury instructions and, in fact, customarily do so despite the familiar form of pretrial order issued in this case.[4] Not only did Peterson's counsel request the instruction prior to the court's jury charge, he also objected to its omission immediately following completion of the

---

[4] In *Yates v Wenk*, 363 Mich 311; 109 NW2d 828 (1961), the Court found error, albeit not prejudicial, where the trial judge refused to consider "certain handwritten requests to charge submitted to him by defendant at the conclusion of proofs." The Court there stated:

"Although trial counsel should be encouraged to prepare requests to charge well in advance of their need by anticipating the issues which the proofs will develop, they should not be discouraged from making changes therein, or additions thereto, at any time before the jury retires to deliberate if developments in the late stages of the case (or even in the court's charge) indicate such changes or additions are necessary to the protection of the rights of the parties. *Crippen v Hope*, 38 Mich 344 [1878]." *Yates, supra*, pp 316-317.

charge and before the jury retired to begin its deliberations. We think the trial court was free to entertain Peterson's oral request for SJI2d 5.03 as a supplement to the written request for instructions earlier filed.[5]

## III

Plaintiff claims that the jury instruction issue has not been preserved for appeal for the additional reason that the issue was not raised in a motion for new trial.

We know of no authority in this state requiring that a motion for new trial be made in a civil case in order to preserve for appellate review the trial court's failure to give a properly requested SJI, and plaintiff cites none. We have carefully examined the cases cited by plaintiff as standing for the proposition that there is such a requirement. None is controlling.[6]

---

[5] In several decisions rendered before the adoption of the General Court Rules of 1963, the Court has indicated disapproval of oral requests for jury instructions. See, *e.g., Peden v Carpenter,* 352 Mich 604, 610; 90 NW2d 647 (1958); *Corpron v Skiprick,* 334 Mich 311, 319; 54 NW2d 601 (1952). However, in *People v Herbert Van Smith, Jr,* 388 Mich 457, 461-462; 203 NW2d 94 (1972), the Court noted that GCR 1963, 516.1 "provides that *written* requests should be made at or before the close of evidence, but neither forecloses oral requests nor limits the time for making them." See also *People v Rogers,* 411 Mich 202, 208; 305 NW2d 857 (1981).

[6] In *Dixison v Asher,* 7 Mich App 547; 152 NW2d 161 (1967), the appellants complained that the jury verdict was inadequate as a matter of law and also raised, for the first time, a charge of inadequate jury instruction, a claim that had not been raised in the motion for new trial at which the issue of the inadequacy of the verdict was addressed. The Court of Appeals cited no authority for its statement that the appellant's complaint on appeal concerning the jury instruction "was waived due to failure to raise it on the motion for new trial," and we are aware of none.

In *Seaton v State Farm Life Ins Co,* 75 Mich App 252, 260; 254 NW2d 858 (1977), the Court of Appeals declared: "We will not review alleged error in supplemental jury instructions where objection was not initially raised below in a motion for new trial," citing GCR 1963, 516.4. That rule provided:

In the case before us, timely objection was made to the omission of SJI2d 5.03 before the court began instructing the jury and afterwards.

We have never held, and our court rules do not provide, that an assignment of error concerning jury instructions, to which objection is timely made at trial, is waived on appeal unless also raised in a motion for a new trial. While there might be some procedural merit in a rule which requires that issues concerning instructional errors be raised in a motion for new trial as a condition precedent to their consideration on appeal, such a requirement is not now the law.

## IV

We come now to the issue for which we granted

---

*"While the jury is deliberating* the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. Objections thereto shall be made in a motion for new trial." (Emphasis added.)

The plaintiff's complaint in this case does not relate to an instruction given "[w]hile the jury [was] deliberating." Thus, GCR 1963, 516.4 is inapplicable. Even if applicable, the rule does not provide that such an objection, if not raised in a motion for new trial, is waived.

In *Hill v Husky Briquetting, Inc,* 78 Mich App 452, 459; 260 NW2d 131 (1977), the Court stated that the "defendant has waived any right to appellate review of [an instructional] objection by its failure to raise the issue on the motion for a new trial." The Court cited only *Dixison, supra,* which, as we have said, is not controlling because it cites no authority from this Court, the General Court Rules, or otherwise for such a requirement.

Finally, plaintiff cites this Court's decision in *Sacred Heart Aid Society v Aetna Casualty & Surety Co,* 355 Mich 480; 94 NW2d 850 (1959). In that case, responding to the appellant's claim of instructional error, the Court stated:

"Appellant may not now contend that the failure of the trial judge to charge that defendant Jachim stood in a fiduciary relation to plaintiff was prejudicial to it. It does not appear that the question was raised in the trial court on the motion for new trial, *or otherwise."* (Emphasis added.) *Id.,* p 488.

*Sacred Heart Aid Society* is distinguishable because this Court emphasized that there had been no objection in the trial court about any deficiency in the jury charge, either in a motion for new trial *or otherwise,* that is, during trial. Here, the defendant objected at trial to the failure to give SJI2d 5.03.

leave to appeal: whether the failure to give an accurate, applicable, and properly requested Standard Jury Instruction is or should be, in all cases, error requiring reversal. *Javis, supra.*

GCR 1963, 516.6(2) provided:

> Pertinent portions of Michigan Standard Jury Instructions (SJI) published under authority of this subrule shall be given in each civil case in which jury instructions are given if (a) they are applicable and (b) they accurately state the applicable law.

To repeat, the rule announced in *Javis* is:

> Where there is an omission of, or a deviation from an applicable and accurate SJI, prejudicial error will be presumed; provided that the erroneously omitted SJI was properly requested at trial; and, provided that in those cases where error is charged as a result of a deviation from a SJI, said deviation was brought to the attention of the trial court prior to the commencement of jury deliberations. [*Javis, supra,* pp 702-703.]

A reassessment of the *Javis* rule should begin with a careful review of the case itself.

In *Javis,* the Court was considering a motorcycle-school bus accident case in which the motorcyclist and his passenger sued for recovery of personal injury damages. Upon cross-examination of the defendant school bus driver, plaintiffs' counsel attempted to impeach the witness by showing that certain statements the witness made in his pretrial discovery deposition were inconsistent with his testimony at trial.[7]

---

[7] The Court described the alleged inconsistencies as follows:

"1. The time taken by the Javis motorcycle to travel the 400 feet from the point it first became visible to Baltzell to the point of collision.

At the appropriate time, plaintiffs' counsel requested that the court's jury instructions include then-applicable SJI 3.01(A), covering impeachment of a party witness by a prior inconsistent statement. The trial court declined to give the requested instruction, preferring instead to instruct the jury concerning general witness credibility, without detailed emphasis upon impeachment of a party witness by a prior inconsistent statement. When the jury returned a verdict of no cause of action, the plaintiffs appealed, claiming that the trial court's failure to give SJI 3.01(A) requested by plaintiffs was error requiring reversal because Rule 516.6(2) mandates that the Standard Jury Instructions be given "if (a) they are applicable, and (b) they accurately state the law."

This Court acknowledged the "mandatory nature" of the SJI, but observed that the duty to give the appropriate SJI "does not, however, resolve the difficult issue of whether an appellate court should find reversible error in any failure to give a requested and applicable SJI" because Rule 516.6 "makes no mention of a standard of review" for departure from or failure to give an applicable SJI. *Javis, supra,* p 698. After noting that the generally

"Deposition: 'I believe something around seven seconds.'

"Trial: '[O]nly a matter of seconds. . . . Well, I believe it's something less than that [seven seconds] now that I think about it and I have been out there driving that road again.'

"2. The speed of the bus as it entered the intersection and began its southbound turn.

"Deposition: 'I was proceeding south going about five miles an hour.'.

"Trial: 'Less than five miles an hour. . . . Five or less, around there? [*sic*].'

"3. The position of the bus in the southbound lane of Hogback Road at the time of collision.

"Deposition: 'I don't believe [Javis] could have [found room to maneuver around the bus] on the paved portion.'

"Trial: 'I'm not sure if I blocked the whole lane. I know it [the bus] was in that lane, but I don't know how much I blocked.'" *Javis, supra,* p 695.

applicable standard of review for instructional error is the harmless error rule as provided in GCR 1963, 529.1,[8] the Court opted nevertheless to "put its supervisory authority behind the consistent and uniform application of the SJI" by adopting "a strict standard for SJI errors," *Javis, supra,* p 699, mandating automatic reversal, without regard to any showing of any unfair prejudice, whenever a trial court declines to give an accurate and applicable SJI which is properly requested by a party.

The automatic reversal rule was adopted despite the plain language of Rule 529.1 that the standard for review of a claim of error arising from "anything done or omitted by the court" requires that no verdict should be set aside or new trial granted unless the refusal to do so would be "inconsistent with substantial justice." The Court was able to reconcile adoption of a presumption of prejudice standard of review for SJI errors despite the fact that Rule 529.1 establishes a harmless error standard for reviewing discrepancies in civil proceedings because

> [s]uch a result (presumption of reversible error) would not ignore the harmless error rule of GCR 1963, 529.1, but rather would construe the specific requirements of GCR 1963, 516.6 as controlling over the general provisions of the harmless error rule. [*Javis, supra,* p 698.]

---

[8] GCR 529.1 stated:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding shall construe these rules to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequences of any error or defect in the proceeding which does not affect the substantial rights of the parties."

That was so, even though, as the Court observed, "GCR 1963, 516 makes no mention of a standard of review" for instructional errors. *Id.*

Acknowledging that the newly adopted presumption of prejudice rule was an expression of the Court's preference for the policy it served rather than the harmless error Rule 529.1 earlier adopted, the Court said:

> It would be reasonable, and consistent with our policy in other instances of mandatory rules[2] to take a strict approach and confirm our position in favor of the mandatory use of the SJI by requiring any erroneous deviation to be treated as requiring reversal.

[2] See for example, GCR 1963, 785.7(5), and *People v Shekoski,* 393 Mich 134; 224 NW2d 656 (1974), where the Court stated in part:

"The requirements for a valid guilty plea after June 1, 1973 are set forth specifically in GCR 1963, 785.7. The bench and bar are hereby advised that strict adherence to those requirements is mandatory and that neither substantial compliance nor the absence of prejudicial error will be deemed sufficient."

We observe in passing that the "presumption of prejudice" rule in *Shekoski* survived for less than one year. In *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 (1975), the automatic reversal rule of *Shekoski* was abandoned as unworkable and unjust and a more flexible standard of review was adopted.

Responding to the argument that the new rule would require that verdicts be set aside in cases in which there could be no showing of prejudicial error for failure to give a requested SJI, the Court stated:

> Whatever wasted effort that will result from the reversal of those few cases wherein a trial court erroneously deviates from the SJI will be overcome

by the benefits of conserved trial court time at the instruction stage, certainty to trial counsel as to how the law will be stated to the jury, and a clear and concise instruction for the jury to work with. [*Javis, supra,* p 699.]

Four years after the decision in *Javis,* this Court decided *Socha v Passino,* 405 Mich 458; 275 NW2d 243 (1979). In that case, over the dissent of two justices, the Court reaffirmed its adherence to the *Javis* rule that a trial court commits error requiring reversal as a matter of law, if it fails to give an SJI which is accurate, applicable, and properly requested by counsel. In *Socha,* the jury verdict for the defendant was vacated because the trial judge declined to give SJI 2.06, which provided:

It has been brought out that an attorney has talked with a witness. An attorney may properly talk with a witness for the purpose of learning what the witness knows about the case and what testimony he will give.

A careful reading of *Javis* and *Socha* reveals that the essential rationale for the *Javis* rule was this Court's desire, as a matter of policy, to force compliance with Rule 516.6(2) because the SJI "uniformly present juries in civil cases with clear, concise and unbiased instructions to guide their deliberations," and because use of "the SJI . . . conserve[s] the energies of trial counsel and the trial courts by eliminating the need to draft and select proposed instructions on commonly encountered subjects for jury resolution." *Socha, supra,* p 467, quoting *Javis, supra,* p 697. "These enumerated benefits of the SJI are present," the Court said, "only if the SJI are regularly employed by the trial courts." *Id.*

We fully agree with the *Javis* Court's statement

of the original purposes of the SJI and the salutary effect of their regular use in trial courts. We conclude, however, that the regular, indeed mandatory, use of the SJI by trial courts does not require the enforcement sanction of automatic reversal for departure from the requirements of 516.6(2), and we believe that, on the basis of ten years of experience with *Javis*, fairness will not permit it.

Ten years ago, when *Javis* was written, the majority of this Court may have been understandably concerned that some, perhaps many, trial judges were not yet regularly using the somewhat new Standard Jury Instructions.[9]

It is very clear that trial courts throughout the state are accustomed to using the Standard Jury Instructions, use them as a matter of course, and, in fact, depend very heavily upon the work of the Standard Jury Instruction Committee to monitor and update existing SJI, and promptly publish new instructions as statutory and case law change. The rather considerable combined trial and appellate court experience of the members of this Court is that the use of the SJI has become so habitual and

[9] On April 14, 1970, the Supreme Court amended GCR 1963, 516 by adding subpart .6. The new subsection created a Standard Jury Instruction Committee and provided that the committee "shall have authority from time to time to adopt and publish standard jury instructions or to alter or repeal standard jury instructions in effect." In subpart .6(2), the new SJI were made mandatory in the language which appears in the rule today. The first set of SJI adopted and promulgated by the Standard Jury Instruction Committee covered simple personal injury actions as well as some general instructional matters for use in the trial of most civil jury cases.

Thus, at the time *Javis* was written, the SJI had been in existence for just five years and covered only a small portion of the myriad subject matter with which trial judges were concerned in charging circuit court juries in civil cases. The judges were required to continue to depend heavily upon their own carefully crafted jury instructions, some suitable for regular use as pattern instructions in subject areas not covered by the SJI, and others required to be written to accommodate the unique requirements of individual cases.

commonplace in our trial courtrooms, and that trial judges rely so routinely upon counsel to request accurate and applicable SJI, that the "strict standard for SJI error" announced in *Javis* is no longer needed in order to assure compliance with the court rule or to achieve the policy goals that moved the *Javis* Court to adopt the rule of that case.

The goals sought to be accomplished by the *Javis* rule have been largely realized. No practice is more firmly rooted in trial court procedure throughout this state than the use of SJI. It is now virtually automatic that at the close of the proofs the jury is excused and the trial court and counsel take up discussion of the requested SJI. Ordinarily, a list of proposed SJI, often identified only by number, or perhaps by subject title, are presented to the court by counsel for each side, sometimes together with the text of special instructions not covered in the SJI. Lawyers and judges have become so familiar with the SJI and so accustomed to relying upon them that the colloquy concerning proposed jury instructions is often conducted largely in the language of SJI numbers.

Automatic nullification of trial court verdicts without regard to prejudice, even in relatively small numbers, for inconsequential departures from the SJI, given the attendant inconvenience, expense, and anguish to litigants, the resultant consumption of trial and appellate judicial resources, and the attendant inefficiency and burden upon the taxpayers, is an inappropriate sanction for harmless procedural trial error.[10] We are per-

---

[10] The presumption of prejudice rule appears not to have found favor generally. Of the six states besides Michigan that require the use of standard jury instructions (Arkansas, Colorado, Illinois, Missouri, New Mexico, and Oklahoma), only Missouri has adopted an "automatic reversal" or "presumption of prejudice" rule. *Brown v St*

suaded that the automatic reversal sanction of the *Javis* rule has accomplished its intended purpose and that its continued application is too often counterproductive of fairness.[11]

We continue to believe that the Standard Jury Instructions should be utilized by the bench and bar for the salutary policy reasons articulated by the Court in *Javis*. Indeed, MCR 2.516(D)(2) mandates their use.[12] That, however, as the *Javis* Court observed, "does not . . . resolve the difficult issue of whether an appellate court should find reversible error in *any* failure to give a requested and

*Louis Public Service Co*, 421 SW2d 255 (Mo, 1967). In the remaining five states, reversal follows upon departure from or failure to give an applicable and accurate standard jury instruction, when the reviewing court finds unfair prejudice to have resulted.

"At least in Missouri this error is presumed to be prejudicial; but in other jurisdictions, error is to be judicially determined rather than presumed or concluded." See Anno: *Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions*, 49 ALR3d 131.

[11] Research discloses at least ten published Court of Appeals cases in which trial court verdicts were set aside for failure to give SJI requested by counsel without regard to whether the instructions as given were fair, complete, and balanced, or whether the refusal to give the omitted SJI unfairly prejudiced the complaining party: *Jones v Porretta*, 138 Mich App 241; 360 NW2d 181 (1984); *Tibitoski v Macomb Disposal Service, Inc*, 136 Mich App 259; 356 NW2d 15 (1984); *Villar v E W Bliss Co*, 134 Mich App 116; 350 NW2d 920 (1984) (*rev'd on other grounds*, but the Court stated, in dicta, that there was *Javis* error as well); *Citizens National Bank v Mayes*, 133 Mich App 808; 350 NW2d 809 (1984); *Glavin v Baker Material Handling Corp*, 132 Mich App 318; 347 NW2d 222 (1984); *Johnson v Corbet*, 127 Mich App 804; 339 NW2d 648 (1983); *Young v Ann Arbor*, 119 Mich App 512; 326 NW2d 547 (1982); *Jackovich v General Adjustment Bureau, Inc*, 119 Mich App 221; 326 NW2d 458 (1982); *Serra v DeMaestri*, 66 Mich App 171; 238 NW2d 568 (1975); *Bolser v Davis*, 62 Mich App 731; 233 NW2d 845 (1975). In addition, of course, see *Javis* and *Socha*, *supra*.

[12] The new court rule provides:

"(2) Pertinent portions of the Michigan Standard Jury Instructions (SJI) must be given in each action in which jury instructions are given if

"(a) they are applicable,

"(b) they accurately state the applicable law, and

"(c) they are requested by a party." MCR 2.516(D)(2).

applicable SJI." *Javis, supra,* p 698. (Emphasis added.) We think an appellate court should not do so and should vacate a jury verdict only when the failure to comply with MCR 2.516 amounts to an "error or defect" in the trial so that the failure to set aside the verdict would be "inconsistent with substantial justice." That is the harmless error standard adopted by this Court in GCR 1963, 529 and readopted in MCR 2.613(A),[13] and applicable in all civil proceedings. We now hold that it is once again the applicable standard for appellate review of instructional errors, including departure from the requirements of MCR 2.516(D)(2). We will continue to require adherence to the express language of Rule 2.516. What is modified today is the standard of review for errors committed as a result of noncompliance with the rule.

That means, for example, that when an accurate and applicable SJI has been properly requested by a party, it shall be given by the trial court if the court, in its discretion, gives an instruction at all on the general subject covered by the requested SJI. However, it remains the duty of the trial court, as historically it has been, to determine the subject matter of the instructions to be given to the jury, and that includes the duty to determine the applicability of the particular SJI requested by counsel. *Socha, supra,* p 467. That duty cannot be delegated to counsel. Merely because the evidence in a case may include the subject matter of an SJI, it does not mean that the court, upon request of counsel, is automatically required to read every SJI

---

[13] MCR 2.613:

"(A) Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."

which might tangentially touch on the subject matter. The trial court's duty to determine the "applicability," under MCR 2.516, of a requested SJI runs deeper than that and calls for the exercise of discretion. It is conceivable, for example, that a given SJI would accurately state the law and be applicable, in the theoretical sense that the evidence in a case included reference to the subject matter of that SJI, but that a wise and experienced trial judge, in the exercise of informed discretion, would determine that reading the SJI would confuse the jurors or unnecessarily distract them from the material issues in the case, or extend the jury instruction process out of all proportion to the educational benefit to the jurors and fairness to the litigants, or unduly emphasize a potentially prejudicial aspect of the evidence, or simply add nothing to an otherwise balanced and fair jury charge nor enhance the ability of the jurors to decide the case intelligently, fairly, and impartially. This, of course, is a way of saying that it is for the trial court to determine when the SJI are applicable, not in an abstract or theoretical sense, but in the context of the "personality" of the particular case on trial, and with due regard for the adversaries' theories of the case and of counsel's legitimate desire to structure jury argument around anticipated jury instructions.

Appellate review of assignments of error claiming a violation of MCR 2.516 will henceforth be tested according to the standard adopted in MCR 2.613. While the appellate court should not hesitate to reverse for a violation of Rule 2.516, it should not do so unless it concludes that noncompliance with the rule resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be "inconsistent with substantial justice."

## V

We turn, then, to a determination of whether, in this case, the failure to give requested SJI2d 5.03 violated that standard.

It is clear that Corbet and Selden were shown to have criminal records. The evidence of their prior criminality was unquestionably admissible and no objection was registered to the evidence. There is no question that, prior to the jury being instructed, Peterson's counsel requested that the trial court include SJI2d 5.03 in its instructions to the jury and timely objected when the instruction was not given. The trial court gave no reason for declining to give the requested instruction. Had the trial judge explained for the record, and consequently for us, why he thought the requested instruction was not accurate or applicable, or why, for other reasons, it should not be given, we would be greatly assisted in determining whether the court's discretion in rejecting the requested instruction was soundly exercised. The court did not do so, however, and we are required to test the departure from Rule 516 without the benefit of the trial court's reasoning.[14]

The properly requested instruction the trial court failed to give reads:

Impeachment by Proof of Conviction of Crime
In deciding whether you should believe a witness you may take into account the fact that [he/ or/she] has been convicted of a crime and give

[14] While this Court is reluctant to impose upon the trial courts a boiler-plate requirement to state reasons for discretionary rulings, it is manifest that appellate deference to the exercise of trial court discretion is made unnecessarily difficult, and often impossible, when trial courts fail to articulate the reasons for a discretionary ruling, particularly concerning the refusal to give requested jury instructions.

that fact such weight as you believe it deserves under the circumstances.

The instruction, like the impeaching evidence which made it applicable, related to the credibility of Corbet and Selden. The closest the trial court came during its instructions to the jury to giving the thrust of omitted SJI2d 5.03 was the court's instruction on general credibility of witnesses, which was given. The court's charge in that connection was:

> In determining whether any fact has been proved, you shall consider all the evidence bearing on that fact, without regard to which party produced the evidence. It is not necessary for every fact to be proven directly by a witness or an exhibit. A fact may be proven indirectly by other facts or circumstances from which it usually and reasonably follows according to the common experience and observation of mankind. This is called circumstantial evidence, which you are to consider along with other evidence in the case.
>
> *   *   *
>
> Now you are the sole judges of the facts in the case and must determine which witnesses you will believe and what weight you will give to their testimony. In doing so, you may take into account each witness's ability and opportunity to observe, his or her memory, his or her manner while testifying, any interest, bias or prejudice he or she may have, and the reasonableness of his or her testimony considered in light of all the evidence in the case.
>
> *   *   *
>
> In deciding whether you believe a witness, you may consider the fact that at some earlier time he said or did something that does not agree with what he said—with what he testified to on an important point. What he or she said earlier may

be considered only in deciding whether you should believe him or her, and may not be considered as proof of the facts in his or her earlier statements, unless he or she testified that his or her earlier statement was true, in which event it may be considered as proof of the facts in the statement.

In deciding whether you believe a party who has testified, you may consider that at some earlier time he said or did something that did not agree with what he said or what he testified to here on an important point. Because he is a party, what he said or did earlier may be considered not only in deciding whether you should believe him, but also may be considered as evidence of the facts in this case.

The question then is whether the trial court's failure to focus the jury's attention directly upon the fact that two of the witnesses were shown to have prior convictions unfairly prejudiced the defendant to the extent that failure to vacate the jury's verdict would be "inconsistent with substantial justice." Stated differently, the rhetorical question might be, "What enlightening or clarifying benefit would the jurors have realized from hearing SJI2d 5.03, failing which, the proceedings were unfair to the defendant?"

The jurors heard the evidence that Corbet had been convicted of burglary on some date unknown, and that Selden had been convicted of larceny from a building in 1978 and of passing "bad checks" in 1967. Had the court read SJI2d 5.03, the jurors would have been told that, in deciding whether Corbet and Selden were believable, they could take into account the fact that both witnesses had criminal records. It is difficult, of course, to conceive of any other purpose for which the jurors might have considered the evidence. SJI2d 5.03 could only have briefly emphasized what the jury already knew: Corbet was once a

burglar and Selden a thief and bad check passer, and their testimony should be evaluated in that light.

The evidence of the two witnesses' criminal records could only have related to their credibility —and that is precisely the purpose for which both counsel asked the jury to consider it. We do not think that by giving SJI2d 5.03, the trial court could have emphasized the proper relevance of the impeaching evidence any more accurately or forcefully than both counsel did.

In closing arguments, counsel for both Johnson and Peterson devoted substantial attention to the credibility of the witnesses, and each concluded that, in the final analysis, the jury verdict would turn in large measure upon the jurors' determination of the credibility of Corbet, Selden and Johnson. Both counsel assigned very little value to Selden's testimony because of the witness' claimed inability to recall the events of the day in question because of his intoxication. In support of their claims that the credibility of Corbet and Selden was critical to the determination of the case, each counsel made specific mention of the witnesses' criminal records. In his closing argument to the jury, counsel for Peterson stated:

> Mr. Selden was a convicted criminal, by his own admission here in Court. And, of course, that's the only other testimony you've got, that of another convicted criminal and a confessed alcoholic, Mr. Corbet.

And,

> It is incredible that a man with Mr. Corbet's background and with his admitted addiction to alcohol, his admitted memory lapses, it is incredi-

ble that he remembers exactly the point in time
on a particular day when he got intoxicated.

Still later, counsel for Peterson argued:

Now, Mr. Corbet is not only a former drug
addict and is not only a convicted criminal, he
came out of Chicago, he is streetwise.

Counsel for Emery also referred to Corbet's crimi-
nal record:

[Corbet is] a convicted felon, he's a drug addict, all
of this by his own admission.

Thus the jury's attention was specifically drawn
to the witnesses' criminal histories in the context
of the claim that such evidence related to their
credibility. Reading SJI2d 5.03 to the jurors could
have done no more.

Upon a review of the whole record, particularly
in light of defense counsel's scathing denunciation
of Corbet's and Selden's credibility, accusing both
of being alcoholics, drug addicts, "brain damaged"
and convicted criminals, we are unable to say that
the trial court's erroneous refusal to give SJI2d
5.03 unfairly prejudiced the defendant, and that
the failure to vacate the jury verdict for the plain-
tiff would be "inconsistent with substantial jus-
tice."

Reversed, and the verdict of the jury is rein-
stated.

BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ.,
concurred with RYAN, J.

LEVIN, J. (concurring). In *Javis v Ypsilanti Bd of*

*Ed,* 393 Mich 689, 702; 227 NW2d 543 (1975), this Court declared that "[w]here there is an omission of, or a deviation from an applicable and accurate SJI, prejudicial error will be presumed" where the erroneously omitted SJI was properly requested, and ordered a new trial because of the failure to give an applicable SJI. In *Socha v Passino,* 405 Mich 458; 275 NW2d 243 (1979), this Court held, in the application of that rule, that the failure to give an applicable SJI was "reversible error."

A majority of the Court is of the opinion that the rule announced in *Javis* should be rescinded because the failure to give an applicable SJI does not justify "automatic reversal." I would, for the reasons stated by Chief Justice WILLIAMS, retain the *Javis* rule, but, because some have been under the impression that the *Javis* rule calls for automatic reversal, make clear, what I always understood *Javis* to mean, that the presumption of error is rebuttable on a showing that the instructional error could not possibly have prejudiced the appellant.

The opinion of the Court states, and I agree, that the applicable harmless-error rule, before *Javis* and now that the rule of *Javis* has been rescinded, is set forth in MCR 2.613 which states:

> (A) Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

I write further principally because I think it is important to set forth, at the same time the *Javis*

rule is clarified, the precedents that explicate the meaning of the court rule.

I

The court rule is, as set forth in the Committee Comment,[1] based on a statute enacted in 1915,[2] which was reenacted in the Judicature Act of 1915.[3] Because the subject matter is now dealt with in a court rule, the statutory language was not continued in the Revised Judicature Act of 1961. The court rule, like the statutory provisions, speaks in terms of "substantial justice."

In *Soltar v Anderson,* 340 Mich 242, 244; 65 NW2d 777 (1954), commenting on the statutory language, this Court, speaking through Justice DETHMERS, said:

The [harmless error] statute is ineffective to change the rule always in effect in Michigan, both

---

[1] 1915 CL 13763.

"This section is similar to Act 89 of 1915, being C. L. '15, 14565, which, however covered criminal as well as civil cases. Act 89 has not been expressly repealed but since it has been superseded in respect to criminal cases by Compilers' § 17354 it would now seem to be superseded in entirety and does not therefore appear in the present compilation."

[2] 1915 PA 89.

"No judgment or verdict shall be set aside or reversed, or a new trial be granted by any court of this State in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

[3] 1915 PA 314, ch L, § 28.

"No judgment or verdict shall be set aside or reversed, or a new trial be granted by any court in any civil case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

before and after the enactment, that the question of reversal is controlled by determination of whether the error was prejudicial.

Earlier, in commenting on the same language in the Code of Criminal Procedure,[4] this Court speaking through Justice WIEST, said:

> That statutory provision is not a cure-all for it must serve within constitutional limitations or else be declared void. Minor errors which clearly can be held not to have affected the result may be mollified by this statutory provision, but errors which deprive an accused of the right of due process of law cannot be composed thereby to the detriment of an accused. The responsibility of maintaining the right of fair trial and due process of law is placed with the judicial branch and cannot be otherwise by legislative permission. We are not concerned with the guilt or innocence of the accused, for we are not triers of the facts and must apply the law to the case as tried. [*People v Bigge,* 288 Mich 417, 421; 285 NW 5 (1939).]

The issue, as set forth in *Soltar* and *Bigge,* is whether the appellant was prejudiced. *Soltar* does not, however, in terms state whether prejudice must be proved or whether it must be disproved, that is to say whether the error must be shown to be harmful or harmless. The answer is suggested by *Germiquet v Hubbard,* 327 Mich 225, 234; 41 NW2d 531 (1950). There, this Court found prejudicial error on a determination that "[i]t cannot be said that . . . testimony [erroneously introduced] did not materially affect the conclusions of the jury." *Id.,* 235. This decision is consistent with earlier authority suggesting that instructional er-

---

[4] 1929 CL 17354; MSA 28.1096.

ror must be proved harmless, not harmful, which is to say, prejudice must be disproved, not proved.[5]

The standard by which prejudice must be disproved and error proved harmless should also be set out. In a civil case, the harmlessness of the error need not be established beyond a reasonable doubt.[6] What needs to be established is that there is very clear evidence showing the error was harmless.[7] "In order to prevent a party, bringing a case to this Court for review, of the benefit of his exceptions, where well taken, upon the ground that he was not injured by the rulings made against him, it should very clearly appear that upon the case as made, he should not in any view that might be taken of it succeed." *Toledo & A A R Co v Johnson*, 49 Mich 148, 150; 13 NW 492 (1882). Justice Traynor has said, "Unless the appellate court believes it highly probable that the error did not affect the judgment, it should reverse."[8] Requiring the error to be proved harmless by very

[5] *Iwrey v Fowler*, 367 Mich 311, 316; 116 NW2d 722 (1962) ("It cannot be affirmatively said that the jury could not have been misled to the prejudice of plaintiffs by the language . . . quoted from the charge); *Gapske v Hatch*, 347 Mich 648, 659; 81 NW2d 337 (1957) ("Under another factual situation we might not feel that his omission here in his charge on negligence was prejudicial . . . . But under all the circumstances . . . , we feel that the instruction . . . might well have altered the result"); *Painter v Lebanon Land Co (On Rehearing)*, 164 Mich 266, 267; 130 NW 205 (1911); *Toledo & A A R Co v Johnson*, 49 Mich 148, 150; 13 NW 492 (1882).

[6] See *Chapman v California*, 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967), concerning the standard in a criminal case.

[7] *Painter v Lebanon Land Co (On Rehearing)*, 164 Mich 266, 267; 130 NW 205 (1911) ("Where the jury proceeds to verdict under an erroneous instruction, it should very clearly appear that the defeated party could not, in any view of the case, have succeeded; otherwise prejudice must be presumed to follow the error").

[8] Traynor, The Riddle of Harmless Error, p 35. Traynor explains that requiring the appellate court to reverse unless it is highly probable the error did not affect the judgment is less stringent than the *Chapman* standard of requiring proof beyond a reasonable doubt that the error did not affect the judgment, but more stringent than requiring proof that it is more probable than not that the error did not affect the judgment. *Id.*, pp 34, 35, 44.

clear evidence has minimized the risk of enforcing a judgment that was quite possibly influenced by error without requiring reversal when it is highly improbable that an error contributed to the judgment.

## II

The opinion of the Court additionally speaks to the question when a judge may refuse to give an applicable SJI. That question is not presented because, as acknowledged in, and indeed it is the predicate of, the opinion of the Court, the instruction at issue in the instant case was applicable. Thus there is no occasion to address the question, in the instant case, when a judge may refuse to give an applicable SJI, and it is not appropriate to do so.

WILLIAMS, C.J. (*dissenting*). I respectfully dissent from the majority opinion.

The majority correctly recognizes that under *Javis v Ypsilanti Bd of Ed,* 393 Mich 689; 227 NW2d 543 (1975), the Court of Appeals properly found that the trial court should have given the applicable requested Standard Jury Instruction. However, while observing that "[w]e continue to believe that the Standard Jury Instructions should be utilized . . . for the salutary policy reasons articulated in *Javis,"* the majority overrules the *Javis* "presumption of prejudice" rule and substitutes a "harmless error" rule. I dissent because I believe the "salutary policy . . . articulated in *Javis"* will not be effectuated without the *Javis* "presumption of prejudice" rule that the majority opinion abolishes.

Unfortunately, this case and the companion case of *Moody v Pulte Homes, Inc,* 423 Mich 150; 378

NW2d 319 (1985), present this Court with very inadequate records and arguments upon which to formulate an opinion of any kind as to whether to retain or overturn the *Javis* rule.

In the instant case counsel for the defendant stated at oral argument that in Wisconsin, which does not have a "presumption of prejudice" rule, judges strictly require the use of Standard Jury Instructions, and he believed Michigan judges would do likewise. In oral argument in the *Pulte* case, defense counsel opined that a rule for a "mere technical error" per se would be unfair, whereas counsel for plaintiff stated, "[I]f you don't have a mandatory rule that will be absolutely enforced, you might as well scrap the standard instructions, because we're very quickly going to revert to a situation where the standard instructions at the least instance will be disregarded." No counsel referred to any statistical analysis or academic study bearing on the issue of the use of Standard Jury Instructions.

The insufficiency of the record virtually requires both the majority and me to rest our conclusions on judicial notice. The majority opinion relies on the experience of this Court for the conclusion that trial courts and attorneys make good use of the Standard Jury Instructions. I am inclined to agree that the SJIs are in general use. However, the record appears to indicate only that *some* Standard Jury Instructions are used. The record does not indicate that *all* applicable and requested instructions are given. Yet GCR 1963, 516.6(2) (now MCR 2.516[D][2]) mandates that all such applicable and requested instructions be given by the court. In other words, I am not at all sure that the instant case is unique, where most of the applicable and requested Standard Instructions were given, but one was not.

As a consequence, on the basis of the record as herein extended by personal observation of the justices of this Court, my conclusions are as follows. First, if the GCR 1963, 516.6(2) requirement of mandatory use of Standard Jury Instructions is being observed with very few exceptions as the majority contend, then the "presumption of prejudice" sanction will be so seldom put to use that the burden of that sanction will cause very little trouble indeed. Second, if, on the other hand, the mandatory court rule would not be followed without the *Javis* sanction as plaintiff's counsel in *Pulte* contends, then it would not be good law to lose the advantage of that sanction in view of the salutary policy considerations upon which *Javis* is based. Therefore, on either basis, it seems that the retention of the *Javis* rule is commended by common sense, because there is general agreement as to the policy benefits of the rule and no evidence that much harm would occur through its continuation, whereas with its abolition the courts might well, in the words of plaintiff's counsel in *Pulte,* "revert to a situation where the [Standard Jury Instructions] at the least instance will be disregarded."

So, pursuant to the common wisdom, I would follow the well-tested axiom, "If it ain't broke, don't fix it." I would therefore affirm the judgment of the Court of Appeals and continue to follow the wisdom of *Javis.*